Mary A. Baker & others *vs.* Charles F. Miller & another.
Edwin L. Bowman *vs.* Mary A. Baker & others.

Barnstable.    October 6, 1932. — October 25, 1933.

Present: Rugg, C.J., Crosby, Wait, Donahue, & Lummus, JJ.

*Boundary. Deed,* Construction, Recording. *Land Court,* Findings of fact.

At the hearing in the Land Court of a petition for registration of the title to shore land, the issue was the direction of one boundary line, and it was contended that a "Salt meadow" referred to in one of the early material deeds was a monument which required the trial judge to disregard an inconsistent course stated in the deed. The deeds were vague and ambiguous, and parol evidence was admitted to aid in their construction. On all the evidence, it was *held,* that the judge was not required to find that the meadow referred to was so located that it was inconsistent with the given course; and that there was no merit in the contention.

The mere circumstance, that a certain deed was recorded before another deed not by the same grantor, would not give the first deed as a matter of law precedence over the second in the sense that the descriptive provisions in the first deed would control such provisions in the second, and a statement in a decision by a judge of the Land Court in a case in which such deeds were material, that the first deed "thus has record title priority," could not be taken to have been used in that sense.

There was no error in a conclusion by the judge in the case above described, based upon a consideration of all the material deeds and other factors and not merely upon the earlier recording of the first deed, that that deed was controlling.

Findings of fact by a judge of the Land Court, which are warranted by the evidence and justifiable inferences from the evidence, must stand.

Two PETITIONS, each for registration of the title to land in Falmouth, filed in the Land Court on September 6, 1927, and July 30, 1930, respectively.

The cases were heard together in the Land Court by *Smith*, J. The petitions, and material evidence and portions of the judge's findings and decision, are described in the opinion. Mary A. Baker and others alleged exceptions and appealed in each case.

The lands in question are shown on the sketch on page 219.

*W. I. Morse*, (*H. A. Baker* with him,) for Mary A. Baker and others.

*J. P. Sylvia, Jr.*, for Charles F. Miller.

DONAHUE, J. These are petitions to register the title to two parcels of land in Falmouth. It is convenient to refer to the first case as the Baker case and the petitioners as the Bakers, although all of them do not bear that name, and one of them, Edwin L. Bowman, is the petitioner in the second case. Charles F. Miller is a respondent in both cases and the Bakers are also respondents in the second case. The two petitions were heard together by a judge of the Land Court. The evidence consisted of deeds, abstracts of deeds, examiners' reports, plans, photographs and oral testimony. The cases come to this court on a bill of exceptions filed by the Bakers as the petitioners in the first case and on a bill of exceptions filed by them as respondents in the second case.

1. The land sought to be registered in the first case is described in the amended petition as bounded: "Southerly by land of Crowell Realty Trust, Rena Islie and Leonard F. Hoxie; Easterly by land of Charles W. Miller and the shore road so-called; Northerly and Westerly by the waters of Buzzards Bay." The controversy between the Bakers and Miller is as to the location of a portion of their common

boundary line. The effect of the judge's finding is that the greater part of the northerly portion of the tract claimed by the Bakers belongs to Miller and a small area to Bowman. More particularly stated, the present dispute between the Bakers and Miller involves only that portion of the boundary line fixed by the judge as running due west to the bay from

the southerly end of a row of cedar trees shown on the sketch printed herewith. The petitioners contend that the true line runs north from that point. There was evidence that the row of trees was set out as a windbreak in 1906 by Miller's predecessor in title.

The judge of the Land Court found that no changes in the common boundary line between the two parcels had been made by adverse possession. His findings correctly characterize the early deeds of the respective tracts as vague and more or less ambiguous. Parol evidence was properly admitted to aid in the construction of the deeds and in the determination of the location of the lands therein described. The descriptions in early deeds in both chains of title indicate that the common boundary line between the two tracts ran westerly to Buzzards Bay. In fixing the common boundary line up to a point near the southerly end of the row of cedar trees, beginning at the southeasterly corner of the Baker land, the judge determined that the courses up to that point ran northeasterly, northerly and northwesterly, the latter course, northwesterly, constituting about two thirds of so much of the common boundary line as is not now in dispute. The Bakers contend that the judge should not in fixing the line from the cedar trees to the bay have followed a westerly course as indicated by the early deeds. They maintain that a deed from Joshua Crowell to Barnabas Crowell dated 1834, and recorded in 1843, in the Miller chain of title, refers to a fixed natural object which makes applicable the rule that where land conveyed is described by courses and also by monuments which are certain or capable of being made certain, the monuments govern and a contrary description by courses must yield. *Temple* v. *Benson,* 213 Mass. 128.

The deed to Barnabas Crowell above referred to conveys a tract adjoining land of Richard Landers (a predecessor in title of the Bakers) and in part describes the premises conveyed as bounded "beginning at the Southeast corner by Richard Landers land, thence Westerly by said Landers land to the Salt meadow, thence by said meadow to the shore, thence by the shore running Northerly to the Herring

river . . . ." A deed in the Baker chain of title dated 1844
and recorded in 1845 conveys to Rebecca Landers "A
certain piece of Meadow called the 'Fresh Marsh'" and
describes its boundary line, from a point at the southeast
corner of the premises conveyed, as "running . . . Westerly
by the land of Warren Crowell [a predecessor in title of
Miller] to the Bay." The Bakers contend that the "Salt
meadow" referred to in the Crowell deed was, at the time
both of these deeds were recorded, located along the Herring
River westerly of the site of the present bridge shown on
the sketch, and that this salt meadow constituted a monu-
ment which required the judge to disregard the description
in the deeds indicating the common boundary line as run-
ning westerly to the bay and to draw the line nearly due
north from the point at the southern end of the cedar trees.
We are of the opinion that on all the evidence before him
the judge was not compelled to find that the salt meadow
referred to in the Crowell deed was located along the Herring
River. There was evidence tending to show that in 1845
there was a strip of marsh land in the area south of the
Herring River between the present location of the bridge
and the shore, which marsh land between that date and
1895 had disappeared in changes which had come in the
point where the river actually entered the bay. The Bakers
took exception to the "ruling and conclusion" that the
situation at the mouth of the river is substantially the same
today as it was in 1845. This was a finding of fact which we
cannot say was unwarranted on the evidence. It appeared
that between the years 1845 and 1895 the junction of the
river and the bay had been gradually diverted northward
several hundred feet by a spit or point of sand which had
come into existence, that in 1899 the channel was changed
by plowing out a new bed at the southerly end of the spit
of sand, that in the last thirty years the river had moved
south thirty or forty feet. Plans and other evidence showed
the actual situation at the mouth of the river at the present
time. Assuming that there was in 1845 a strip of salt
meadow along the southerly bank of the Herring River and
near its mouth which had disappeared but the site of which

could at the present time be located on the ground, it by no means follows that the judge erred in not concluding that this was the salt meadow referred to in the Crowell deed and a monument which would govern the descriptions in early deeds in each chain of title which calls for a line running westerly to the bay. This was a region where salt and fresh marshes and meadows were plentiful and where in the passage of time the sea has wrought changes in the land. The finding by the judge that the marshes fresh and salt existing at the time of the deeds cannot be located on the ground except in a general way was warranted by the evidence. In 1845 the land found by the judge to be now owned by the Bakers included within its boundaries one large pond. By 1895 there had come to be in its place two smaller ponds, which now contain fresh water. The land conveyed to Rebecca Landers in 1845 is described as "A certain piece of Meadow" and as bordering on the shore of the bay. It recites that the land conveyed was "called the 'Fresh Meadow'" but does not assert that it was in fact a fresh meadow. The large pond then existing was connected with the salt waters of the bay. The inference that at least some part of the meadow was then in fact salt was not unwarranted. An inventory of the real estate of Rebecca Landers filed in the probate registry after her death in 1863 shows that she died possessed of "¼ Ton Salt Meadow" as well as "1 Ton Fresh Meadow" and "About 5 Acre Meadow Land" and other lands. The location on the ground today of what was termed in the Crowell deed of 1834 a "Salt meadow" and of the common boundary line from a point at the south end of the cedar trees presented questions of fact. Their decision required consideration of oral testimony and of various early deeds in the Baker, Miller and Bowman chains of title. These instruments were loosely drawn without statement of distances and in some instances without mention of the quantities of land conveyed and indefinite or blank as to the ownership of adjoining tracts. No useful purpose would here be served by discussing their ambiguities, irrelevances and conflicts. They, however, afford bases for findings which, taken with

the other evidence, support the ultimate conclusion of the judge. The finding that the "Salt meadow" mentioned in the Crowell deed was not located near the Herring River but was south of the southern end of the cedar trees, and the conclusion that the line ran west to the bay from that point were warranted.

The judge at the outset of the discussion of the Baker case in his filed decision stated that the Crowell deed was conclusive against the Bakers' full claim to the land west of the road. Their full claim as made in the plan they originally filed in the Land Court gave Miller no land bounded on Buzzards Bay. The Crowell deed specifically gave such a boundary. There was no error in treating that question as settled by the Crowell deed, the earliest in the Miller chain of title. It was not contradicted but was confirmed by early deeds in the Baker chain of title. The earliest deed in the Baker chain of title which was in evidence was a deed from Richard Landers to his children dated 1837 and recorded in 1843 in the same year but about two months later than the Crowell deed. Having stated this in his findings the judge went on to say "The Miller deed [meaning obviously the instrument we have called the Crowell deed] thus has record title priority and locates the Richard Landers parcel south of, and adjoining, the Crowell grant, but does not locate the common boundary line on the ground." Since these deeds were not from a common grantor, the deed earlier recorded would have no precedence over the later in the sense that the descriptive provisions in the first deed would control such provisions in the second. The words "record title priority" cannot here be taken to have been used by the judge in such a sense since the Richard Landers deed contained no description of the parcel conveyed other than the words "All my real estate . . . in Falmouth." The findings made by the judge in his decision plainly indicate that he fully considered all pertinent deeds in both chains of title and that his ultimate conclusions were not based on any precedence given by him to the Crowell deed from the fact that it was recorded shortly before the Landers deed.

Other findings of fact to which exceptions were taken by the Bakers were made on conflicting evidence. They must stand as they are warranted by the evidence and justifiable inferences from the evidence. *Erickson* v. *Ames*, 264 Mass. 436, 441.

2. There is now no dispute between Miller and Bowman as to the location of the boundary line between their lands. The judge found that a small parcel of land west of the road bounded westerly and southerly by land of Miller belonged to Bowman. This is within the boundaries of land claimed by the Bakers. Since the judge found that the land bordering the small parcel belonging to Bowman is the property of Miller and not of the Bakers little need be added to what has been earlier said. The judge found that the Bowman land was north of the Miller tract and between it and the Herring River. He fixed the southwestern corner of the small parcel of land west of the road from a reference to a spring in the Crowell deed earlier mentioned. Part of the description in that deed is as follows: "thence by said river Easterly to the meadow of Admah Crowell [who was a predecessor in title of Bowman], thence by said meadow to a spring running out of the bank, thence Easterly as the fence now stands . . . ." There was evidence that within the memory of witnesses there was a spring located at a point variously estimated as twenty to seventy feet west of the location of the present bridge. There was also evidence indicating that there had been a spring a considerable distance east of the road. There was other conflicting evidence as to the location of the Bowman land but the judge's finding of fact was warranted on all the evidence and cannot be disturbed. In each case the entry must be made,

*Exceptions overruled.*