EVERETT SUTCLIFFE *vs.* EDWARD E. BURNS & others.

Essex. February 3, 1936. — March 30, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Land Court,* Findings by judge. *Evidence,* Extrinsic affecting writing. *Deed,* Construction.

Extrinsic evidence was admissible to aid in fixing the location of a boundary of land left doubtful by the language of a deed.

A finding by a judge of the Land Court of the location of a boundary of land, based partly on an ambiguous deed and partly on extrinsic evidence must stand if there was evidence to support it.

PETITION, filed in the Land Court on January 25, 1934, for registration of the title to land.

The petition was heard and dismissed by *Smith,* J. The petitioner alleged exceptions.

*J. V. De P. Phelan,* for the petitioner.

*W. E. Waterhouse,* (*C. M. Crowell* with him,) for the respondents.

PIERCE, J. This is a petition to register title to land in that part of Marblehead known as Naugus Head. The petition was contested by fifty-two respondents. Following an adverse report by the examiner, the case was heard on the examiner's abstracts from the public records, and on oral and documentary evidence.

The locus here in controversy consists of a triangular parcel of land, having its base on Salem Harbor and its apex at a point in what is admittedly the boundary line between land owned by the petitioner's wife and land claimed by the respondents and formerly known as the Sparhawk land. The westerly side line of the triangle as claimed by the petitioner crosses an irregular lot set apart as reservation Z, the roadway known as Naugus Avenue and land claimed by the respondents Burns, Gauss and Facey, by the nearest embankment of an old fort to the shore of Salem Harbor. The easterly line of the triangle follows a stone wall which

the respondents claim to be the true easterly boundary line of their land. The judge of the Land Court on all the evidence, which includes the examiner's abstracts from the public records and oral and documentary evidence, found "in narrative form" the pertinent facts and made certain rulings of law, in substance as follows: Many years ago three old residents of Marblehead owned two adjoining parcels of land, one of which included the locus. The westerly parcel was land of John Sparhawk. The easterly parcel was acquired by Ezekiel and John D. Russell, partly in 1842 and partly in 1864. The petitioner claims title through the Russells by mesne conveyances, and contends that the conveyance to the Russells in 1842 included the locus. The description of this first parcel, which was conveyed in two parts, is as follows: "all that lot or parcel of land situate at the ferry, so called, in said Marblehead, and containing ten acres, more or less. The part of said Lot with the Barn thereon, owned by Benjamin Orne, and hereby conveyed is bounded as follows, Northerly by Salem Harbor. Easterly on land now of Thomas and Joseph Bowden. Southerly on land of Asor Orne herein conveyed, partly, and partly on land of Sparhawk, and Westerly on land of Brimblecome and Sparhawk. Also a piece of Meadow land adjoining the aforesaid land and forming part of said Lot and now owned by sd Asor Orne, and bounded as follows, Easterly on land of Thomas and Joseph Bowden, Southerly on land of Henry Cloutman, and extending to the Stone Wall, Westerly partly on land of Sparhawk and partly on the aforesaid land, Northerly on said land first herein mentioned, or however otherwise the aforesaid premises or any part thereof is meted bounded or described, with the privileges and appurtenances thereto belonging being the whole of said Lot of land as first above mentioned, the same being now enclosed by a stone wall, excepting that small part bounding on land of Sparhawk."

The judge of the Land Court directs attention to the fact that lot A, shown on a sketch attached to his decision, was conveyed in two parcels, the first bounding "Westerly on land of Brimblecome and Sparhawk": that the Brimble-

come land is located on an old plan of the "Sparhawk Estate" made in 1865, which was in evidence, and is a part of the record; that the southerly boundary is partly on the second parcel, later described, and partly on land of Sparhawk; that the second parcel bounds northerly on the first parcel and is called "a piece of meadow land." The judge infers, and consequently finds, that the words as to the wall enclosing all the land sold except "that small part bounding on land of Sparhawk" relate to some part of the meadow lot, as it would be less practical or necessary to enclose such land; that it was not a "small part" but a substantial part of the first described parcel which bounded westerly on land of Sparhawk. The sketch attached to the decision of the Land Court for convenience of reference designates the earlier purchase of the Russells at the water front in 1842 as lot A and the later purchase in 1864 as lot B. Adjoining the northwest corner of lot A is a parcel marked lot C on said sketch which represents the locus in issue. A little later in 1842, the Russells in a mortgage described their land as follows: "all that lot or parcel of land situate at the ferry, so called, in said Marblehead, and containing about nine acres, more or less, with a barn thereon, standing being the same premises which we lately purchased of Azor and Benjamin Orne, and is bounded as follows, Northerly on Salem Harbour, Easterly on land of Thomas and Joseph Bowden, Southerly on land of Henry Cloutman partly, and partly on land of Sparhawk, and Westerly on land of Sparhawk and Brimblecome, or however otherwise bounded, the same being now enclosed by a stone wall."

The two Russells held title until their deaths, John's in 1887 and Ezekiel's in 1891. The parties rightly claiming under them by sundry deeds conveyed the Russell land in 1893 to Thomas S. Pitman. In these deeds for the first time lot C of the sketch attached to the decision is included as part of the Russell lands. Counsel agree they have been unable "to locate or identify any surveyor who made the description." The judge found that, although the deeds clearly include the locus, the grantors had no title to lot C, and there was no evidence of weight tending to show occu-

pation of the locus by either the Russells or the Pitmans under a claim of right, and he directs attention to the deed of the Pitmans to one Monahan in 1926 of land east of the wall between lots A and C on said sketch, such land being shown on two plans made in 1926 and 1928, and to the fact that the words "now or late of Sparhawk" were "written on the other side of such wall to denote the adjoining owner."

It is to be noted that the petitioner's claim to the disputed locus is based on a deed procured from the devisees of Thomas S. Pitman dated February 15, 1933. This deed purports to convey all the right, title and interest to which the grantors were entitled as heirs of Thomas S. Pitman in the land specifically described in a deed of Benjamin F. Doliber *et al.*, heirs of John D. Russell to Thomas S. Pitman, "excluding . . . all land . . . heretofore conveyed by us by deeds . . . heretofore recorded." It is to be further noted that the Pitman heirs or devisees had already conveyed lots A and B to one Monahan, that the deed bounded the tract northwesterly on land "now or late of Sparhawk," and that it is the respondents' contention, as it was the examiner's, that the grantors had divested themselves of all title up to the Sparhawk land, wherever that land was located.

Upon a survey of the Sparhawk exhibits made in 1865, from the Putnam plan, and from other documents and evidence, the judge found that Russell and Sparhawk had always considered their lands so bounded that the locus C fell within the boundaries of the Sparhawk estate; that the Sparhawk land remained undivided up to 1909; that the locus was used by tenants of the Sparhawk heirs for the purpose of pasturage; that in 1908 commissioners appointed by the Probate Court made partition of the Sparhawk land; and that the plan included the locus, parts of which were set out in various lots. The judge specifically found that "the practical interpretation of these two conterminous owners [Russell and Sparhawk], during a long period of years, of the location on the ground of their common boundaries is shown to be in accord. No indication

by plans appears either before or after the 1893 deeds of any Russell line crossing the Sparhawk east line and extending north to the sea by the east side of the 'Fort' lot, until so claimed by the petitioner's filed plan. Each one designates as land of the other owner the territory on the outer side of his plan."

The judge found that, from the time of John Sparhawk's death in 1861 until 1909, the Sparhawk land was let mostly to tenant farmers who used the northerly part, which includes the locus, for pasturage and the southerly part for raising crops to sell; that during all this period at least there was the wall along the east side of the locus as shown on the Pitman plan of 1926; that during this time the Russells and the Pitmans were farming their lands on the east side of the wall; and that the locus remained open on the west side and formed a part of the pasturage area used by tenants of the heirs of John Sparhawk. A witness eighty-five years of age, who had lived in the vicinity all his life, said the wall had stood on its present location since his earliest recollection, that the Russells always farmed up to the wall, and that on the other side the land was always used for pasturage by the Sparhawk people and the tenant farmers. So far as the locus is concerned, the judge found that the respondents, who claim under the Sparhawk partition, have been accustomed to use the road to the old "Fort" lot and bathing beach at the water front of Reservation Z under a claim of right. And regardless of what title may have been shown by evidence of "incomplete acts of adverse possession," he found and ruled "that the old wall on the east side of locus is the true division line of record title between the Sparhawk and Russell lands."

The main controversy concerns the description contained in the conveyance of 1842 to the Russells. The petitioner contends that the judge was in error in finding that the locus was not included in that description, and that consequently the respondents' only rights, if they have any, rest upon the theory of adverse possession by their predecessors. It is to be noted that the theory adopted by the judge was that the petitioner did not obtain title by ad-

verse possession under color of title, and that the actual occupation by the Pitmans from 1893 of land east of the wall (to which they had good title) cannot be imputed to the land west of the wall included in their deeds, which the grantors had no right to convey.

The burden of proof that he has a proper title for registration rests upon the petitioner. *Hughes* v. *Williams,* 229 Mass. 467, 469. The words used in the conveyance of 1842 relating to the small part of the unenclosed land are ambiguous, in that they do not specify clearly to what land that description was meant to apply. That this is true is shown by an examination of the entire description. In the description Sparhawk's land was used to bound the first parcel on the west and on the south; and to bound the second parcel, the meadow land, on the west. The Sparhawk lands used to bound the two parcels on the west were not contiguous since the land of Brimblecome intervened. The petitioner's contention is that the concluding phrase of the deed — "excepting that small part bounding on land of Sparhawk" — "manifestly is not limited in its application to the second lot, but clearly refers back to 'all that parcel of land situate at the ferry'. and applies to the entire ten acres, including both the barn lot and the meadow land." He also suggests " that 'that small part bounding on land of Sparhawk' and which specifically is not enclosed by a stone wall is obviously a part of the barn lot which includes the locus."

These alternative suggested solutions of the application of the quoted phrase demonstrate that the phrase is ambiguous, and that in the circumstances extrinsic evidence was admissible to aid in effectuating the intent of the parties as expressed. *Temple* v. *Benson,* 213 Mass. 128, 132. *Langevin* v. *Fletcher,* 273 Mass. 543, 545.. *Baker* v. *Miller,* 284 Mass. 217, 220. "The significance of words takes color from the time and circumstances in which they are used, and the intent of parties is almost always a matter of fact." *Erickson* v. *Ames,* 264 Mass. 436, 441. Therefore, in the circumstances disclosed, weight is given to the finding made by the judge, even though such finding involves the inter-

pretation or construction of a written instrument. The judge decided that the unenclosed land mentioned in the deed of 1842, above described, related to some part of the meadow lot, as it would be less practical or necessary to enclose such land; and also so concluded for the reason that it was not a "small part" but "a substantial part of the first described parcel which bounded west on Sparhawk." This inference is supported by the evidence of other documents, and by the acts of the parties then concerned indicating that both the Russells and Sparhawk considered the locus as being a part of the Sparhawk land. Compare *Tolman* v. *Sparhawk*, 5 Met. 469, 475, 476; *Proprietors of Liverpool Wharf* v. *Prescott*, 7 Allen, 494, 495, 496; *Coyle* v. *Cleary*, 116 Mass. 208, 210; *Baker* v. *Miller*, 284 Mass. 217, 224.

The decision of the judge on matters of fact will not be disturbed or reversed if there is any evidence to support it. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. *Hart* v. *Deering*, 222 Mass. 407, 409. G. L. (Ter. Ed.) c. 185, § 15. Compare *Hobart* v. *Weston*, 223 Mass. 161, 167; *Hurlbut Rogers Machinery Co.* v. *Boston & Maine Railroad*, 235 Mass. 402, 403; *Webber* v. *Cox*, 256 Mass. 595, 597, 598; *Holmes* v. *Barrett*, 269 Mass. 497, 500–502; *Langevin* v. *Fletcher*, 273 Mass. 543, 547; *Gagne* v. *Chicopee*, 278 Mass. 121, 124. The petitioner cannot prevail here on the theory that his predecessors entered into possession of the locus under color of title and that thereby they acquired title by adverse possession. It may be true that the Russells entered into possession of the land described in the deed of 1842, and that that deed purported to convey land including the locus so as to provide an inference that a title by adverse possession was acquired as to the locus. But whether such adverse possession was made out was a question of fact for the judge upon all the evidence, and that is so though entry is made under color of title. *Nantucket* v. *Mitchell*, 271 Mass. 62, 68. In the face of the findings, which are supported by the evidence, it cannot be ruled that the petitioner did establish such title under the rule that actual possession of a part of a

tract of land, under a color of title as to the whole tract, gives constructive possession of the entire parcel. *Nantucket* v. *Mitchell*, 271 Mass. 62, 68. Compare *Dow* v. *Dow*, 243 Mass. 587. In the case at bar there was evidence also that not only did the petitioner's predecessors not occupy the locus, but that tenants of the respondents' predecessors used and occupied the locus for the purpose of pasturage. Thus even though the latter's possession was insufficient to give title by adverse possession to the respondents' predecessors, it may well have been found to be sufficient to prevent the petitioner's predecessors from acquiring title to · the locus by adverse possession, real or constructive. Compare *Bellis* v. *Bellis*, 122 Mass. 414, 417. The finding of the judge upon this branch of the case is supported by the evidence and must stand.

The petitioner's requests not granted are referred to in his brief. They are argued collectively, if at all. There was no substantial error in the denial of them by the judge.

*Exceptions overruled.*