*Affirmed with costs.*

St. George's Ebenezer Primitive Methodist Church of Methuen *vs.* The Primitive Methodist Church of the United States of America, Eastern Conference, & others.

Essex. April 9, 1943. — December 27, 1943.

Present: Field, C.J., Donahue, Lummus, Qua, & Ronan, JJ.

Land Court, Jurisdiction, Claim adverse to registered owner, Certificate of title. *Real Property*, Registered land: adverse claim, certificate of title. *Mistake. Deed*, Parties, Mistake. *Words*, "Interest."

The Land Court has no jurisdiction under § 112 of G. L. (Ter. Ed.) c. 185 to establish an adverse right or interest in registered land arising after the date of original registration where it does not appear that the claimant filed the sworn statement of his claim required by that section.

A religious corporation, claiming that a deed of gift of registered land was intended to be made to it but that through mistake of a scrivener

the deed was made to trustees for another corporation, asserted an equitable "interest" sufficient to give the Land Court jurisdiction under § 114 of G. L. (Ter. Ed.) c. 185 of a petition by the religious corporation to revoke the trustees' certificate of title and to issue a new certificate to the petitioner.

Evidence of the circumstances of the making of a deed of gift of land to trustees for a certain religious "conference," comprising a number of churches, by a donor particularly interested in one of such churches which thereafter occupied such land and an edifice built thereon by him, and evidence of conduct of the donor, of such church for thirty-nine years following the conveyance, and of the pastor of such church, did not warrant a finding that the deed was made to the trustees instead of to such church through mistake.

PETITION, filed in the Land Court on August 8, 1941.

The prayers of the petition were that "the adverse claim of the petitioner be determined to be valid and be so recorded in the records" of the court "concerning the title to this property"; that the court "determine that the scrivener of the deed in question made a mistake in the habendum of said deed"; that "the petitioner should have been the grantee under said deed"; that "in any event the court determine that the petitioner is the cestui under the trust created by said deed"; that "the transfer certificate of title be revoked"; that "a new certificate and decree be made making the petitioner the grantee in said deed"; and that the "petitioner have such other and further relief as the exigencies of the case may seem to require, or which" to the court "may seem just and honorable."

The case was heard by *Smith*, J.

*J. C. Johnston*, (*J. Friedberg*, *S. Baker*, & *D. A. Baker* with him,) for the respondents.

*M. A. Cregg*, for the petitioner.

RONAN, J. This petition, filed in the Land Court, seeks the revocation of a certificate of title to certain premises, which was issued on December 12, 1902, to the trustees of the Eastern Conference of the Primitive Methodist Church, and the issuance of a new certificate to the petitioner on the ground that one Searles, the owner of the locus, intended to convey it to the petitioner, but through the mistake of the scrivener conveyed it on October 20, 1902, to the said trustees. The demurrer of the respondents was overruled and

their plea to the jurisdiction was overruled. The judge found in favor of the petitioner and ordered the issuance of a new certificate in the name of the petitioner. The case is here both on appeal and on exceptions.

The petitioner, a religious society incorporated in 1888 under the name of the "Ebenezer Primitive Methodist Church of Methuen" (changed in 1906 to "St. George's Ebenezer Primitive Methodist Church of Methuen"), has since its organization maintained a place of public worship in Methuen. The respondent, the Primitive Methodist Church of the United States of America, "Eastern Conference," hereinafter called the conference, was incorporated by special act, St. 1893, c. 175, for the purpose of maintaining public worship according to the faith, usages and discipline of that denomination. The membership of the conference comprises the churches of that denomination located in portions of Rhode Island and Massachusetts. There is a board of trustees who are elected annually and are authorized to receive and hold in trust for the benefit of the conference, donations, bequests and grants "made to the Primitive Methodist Church of the United States of America."

We first consider the plea to the jurisdiction. The petition purports to be based upon G. L. (Ter. Ed.) c. 185, §§ 112, 114. The Land Court is empowered by § 112 to determine the validity of a claim adverse to the registered owner which arose after the original registration of the land. The petition, however, does not allege, and the bill of exceptions, which contains all the material evidence, does not show, that the petitioner ever filed any sworn statement of its claim as required by this section. We cannot accept as a fact the making and filing of such a statement by a mere general reference to such a statement in the petitioner's brief. *Gorey* v. *Guarente,* 303 Mass. 569. *Davis & O'Connor Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401. Consequently, the petitioner shows no right to maintain the petition under this section. One who has neglected to take the necessary and essential steps provided by a statute creating a remedy has no right to the remedy. *Brown* v. *Winthrop,* 275 Mass. 43. *Old Colony Railroad* v. *Assessors of Quincy,* 305 Mass. 509.

*Waltham* v. *Newton*, 306 Mass. 59. *Boston Five Cents Savings Bank* v. *Assessors of Boston*, 311 Mass. 415.

A registered owner or other person in interest may file a petition under G. L. (Ter. Ed.) c. 185, § 114, for an amendment of a certificate of title or the issuance of a new certificate upon proof of any of the specific grounds enumerated in this section "or upon any other reasonable ground," provided relief may be given without opening the original decree of registration and without impairing the title or interest of a purchaser holding a certificate for value and in good faith, unless such purchaser in writing consents thereto. The rights of no innocent purchaser for value have intervened since the issuance of the certificate of title to the trustees, and relief may be granted to the petitioner, if entitled to relief, without disturbing the original decree of registration. *Ward* v. *Prudential Ins. Co.* 299 Mass. 559. The petitioner must show that it is a person in interest in order to maintain a petition under § 114. The word "interest" has been said to be one of broad significance and "its meaning in any particular case depends upon the setting in which it is employed." *Commonwealth* v. *Albert*, 307 Mass. 239, 245. The Legislature in using a term capable of varying shades of meaning must be understood to have adopted the particular meaning that best served its purpose and aim in enacting the statute. *Sears* v. *Nahant*, 215 Mass. 234. *Marlborough* v. *Lynn*, 275 Mass. 394. *Worcester* v. *Quinn*, 304 Mass. 276. Here, we are dealing with a statute that is part of an elaborate legislative plan for the registration of titles to land, where, subject to certain exceptions, all rights of ownership and interests in the land are shown by certificates of title. We think a person in "interest" must be one who has a proprietary, pecuniary or some other right or interest in the land itself, as distinguished from a claim of a personal nature against the owner of the land. We are confirmed in this view by the later use of this same word in this sense in other parts of this statute. It is a general rule of statutory construction that ordinarily a term appearing in different portions of a statute is to be given the same meaning. *Bay State Street*

*Railway* v. *Woburn*, 232 Mass. 201. *Hood Rubber Co.* v. *Commissioner of Corporations & Taxation*, 268 Mass. 355. *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330. *Wellesley College* v. *Attorney General*, 313 Mass. 722. Moreover, § 114 must be construed with § 1 (k) of the same chapter, as amended by St. 1934, c. 67, which conferred jurisdiction upon the Land Court of "All cases and matters of equity cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved, except suits in equity for specific performance of contracts," as parts of a single harmonious legislative system dealing with the registration of titles and interests in land. *Hite* v. *Hite*, 301 Mass. 294. *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300.

We think that one claiming an equitable interest in land has sufficient standing to maintain a petition under § 114. Indeed, it has been held that the Land Court may adjudicate the validity of a right to specific performance of a contract to convey land upon proceedings for the registration of title though it has no power to enforce the contract. *Johnson* v. *Rosengard*, 299 Mass. 375, 377. See *Lamson* v. *Coulson*, 234 Mass. 288. It follows that there was no error in overruling the plea to the jurisdiction.

We now pass to the material facts appearing in the decision of the trial judge. One Searles, a resident of Methuen, became interested some forty years ago in providing a new place of worship in Methuen "for a local group of Methodist people whose pastor at that time he seems to have esteemed highly." He executed a deed of registered land on October 20, 1902, to the "Trustees of the Eastern Conference of the Primitive Methodist Church" upon condition that the premises would revert to him and his heirs and assigns if the church should cease to use the property for religious purposes, or if Methuen became annexed to some other municipality; but if another location in the town became better suited for the promotion of the interests of the church, then the said premises might be sold and the proceeds invested for church purposes in said town. An owner's duplicate certificate was issued and was delivered to the trustees, who

have since retained it. Thereafter, Searles erected a church upon this lot of land at a cost of about $100,000. On April 17, 1906, he wrote to "Trustees of St. George's (Ebenezer) P. M. Church" directing their attention to his efforts "to have you properly housed and equipped as an aggressive and useful church" at a cost of over $100,000. He advised them that he intended to discharge the mortgage which he held on the old church upon condition that, upon the sale of the property, the proceeds would be invested in the names of three trustees, comprising the president of the conference, the pastor of the church and one of the trustees of the church, and that the income would be used to sustain the work of "St. George's (Ebenezer) Church, Methuen." The petitioner accepted the offer, vacated the old church and sold the property, and upon the completion of the new church in May, 1906, it moved in and has since occupied this edifice. Searles told one Crompton, who at times has acted as clerk of the petitioner, early in 1903, that he would build a new church for the "Ebenezer Primitive Methodist Church," and a month later he told him that the old church was not in a good location, that he had spent considerable money upon it and that, on account of his esteem for Dr. Taylor, the pastor, he had decided to build a new church at another location.

Although the deed ran to the trustees, the parties have presented the case on the basis that the real party respondent in interest is the conference. Indeed, there was testimony that the trustees had conveyed the property to the conference, although such a transfer has never been presented to the assistant recorder for the purpose of obtaining a certificate in the name of the conference. We deal with the case as presented by the parties.

The decision of the judge makes three references to the principal issue which was whether the deed to the trustees resulted from a mistake of the scrivener who drafted it. After pointing out that the name of the grantee appearing in the deed came nearer to describing the conference than the petitioner, the judge stated that "He [Searles] doubtless hired someone to draw his deed in the writing of which the

name of the Grantee he intended became mangled as above described." In referring to the deed, the letter of April 17, 1906, and the testimony of Crompton, the judge made the following finding: "But out of all these loose paper transactions, . . . there emerges evidence of a distinct intention on the part of Mr. Searles to devote his land and money gifts to the religious corporation with which Dr. Taylor was connected, and that I find on all the evidence to be the petitioner." The judge also stated that "I am unwilling to believe the law is powerless, in the case of registered land, to remedy a mistake in the written authority purporting to have been given by Mr. Searles in the deed aforesaid, unknown to him and occurring through an error of the scrivener."

The bill of exceptions contains all the material evidence. There is no evidence showing what directions, if any, were given by Searles to the scrivener or who the scrivener was, or any of the circumstances attending the execution of the deed or its delivery to the conference together with the surrender of the owner's duplicate certificate in order that a new duplicate certificate of title might be issued. It is undisputed that the conference has since retained this certificate and has always claimed to own the locus. At the dedication of the church on May 12, 1906, which was attended by delegates of the conference, the petitioner published a memorial pamphlet, prepared by Dr. Taylor, which contained a history of the church and the statement that "In 1903 the land on which St. George's Church now stands was deeded to the Trustees of the Eastern Conference of the Primitive Methodist Church." The "Journal and Year Book of the Annual Session of the Eastern Conference of the Primitive Methodist Church" was published annually by the conference, from 1903 to 1941, inclusive. They were introduced in evidence. The report for 1903 contained this entry: "The gratitude of the Conference was recorded to a kind friend for the generous gift of 36,000 feet of land as a new site for the First Church in Methuen, Mass." and in all of these reports the locus was listed as an asset of the conference. There was also evidence that the members of the petitioner church had known for at least fifteen years

that the conference held title to the locus, and it was not until the petitioner sought permission to withdraw from the conference and its request "for the deeds" was refused in 1941 that the petitioner raised any question as to the title or disputed the title of the conference. Searles knew of the existence of the conference and apparently its relation to the local church. He provided in the letter of April 17, 1906, that the president of the conference should act as a trustee with the pastor and another member of the local church to invest the proceeds of the sale of the old church. Indeed, that letter deals primarily with the discharge of the mortgage upon the old church and with other matters relating to the old church premises. The letter was entirely consistent with knowledge on his part that he had conveyed the locus to the conference. While there was ample evidence that Searles was interested in the local church, yet he could benefit the local church by conveying the property to it or by conveying it to the conference of which the local church was a member and, so far as appeared, would be likely to continue as a member. Searles might have preferred to put the title in the larger central body, and he might well have thought that, whether he conveyed the property to the local church or to the conference, the local church would have the use of the property. It is plain that he knew of the existence of both the local church and the conference. He was free to choose the method by which to make his benefaction. Searles lived until 1920. He was friendly with the pastor of the local church who published the fact at the dedicatory services in May, 1906, that Searles "in 1903" had conveyed the locus of the church to the "Trustees of the Eastern Conference of the Primitive Methodist Church." It seems hardly possible that Searles would not have learned of this fact and, if it was a mistake, would not have sought to correct it. The fact is he did nothing.

The burden was upon the petitioner to prove by a preponderance of the evidence that Searles or the scrivener made a mistake in drafting the deed and that Searles intended to convey the land to the petitioner. There was no

evidence to warrant the finding made that there was such a mistake. See *Kidder* v. *Greenman*, 283 Mass. 601, 613; *Matter of Mayberry*, 295 Mass. 155, 167.

There was error in the denial of the respondents' first request for a ruling to the effect that upon all the evidence the petitioner was not entitled to relief.

We have considered the case upon the exceptions. The appeal apart from the demurrer, which we think was rightly overruled, covered the same ground as the exceptions. It is, therefore, not necessary to deal with both the exceptions and the appeal. *Van Ness* v. *Boinay*, 214 Mass. 340. *Jones* v. *Stevens*, 276 Mass. 318. *Baker* v. *Miller*, 284 Mass. 217. *St. Botolph Club, Inc.* v. *Brookline Trust Co.* 292 Mass. 430.

*Appeal dismissed.*
*Exceptions sustained.*