MARY JANE PAULL, trustee,[1] *vs.* KELLY C. KELLY, trustee.[2]

No. 03-P-1439.

Suffolk. October 4, 2004. - December 13, 2004.

Present: LENK, GRASSO, & COHEN, JJ.

*Real Property,* Boundary, Deed, Registered land. *Deed,* Construction, Description. *Res Judicata. Judgment,* Preclusive effect.

In a boundary dispute bearing on the ownership of a parcel of land lying between the plaintiff's and defendant's respective properties, the Land Court judge, in fixing the location of the disputed property line, properly ruled that a prior unsuccessful action by the plaintiff's predecessor in title to fix the boundary in a previous registration proceeding did not, through principles of issue or claim preclusion determined by G. L. c. 185, § 44, bar the plaintiff's current action, where the first complaint was not dismissed with prejudice and the location of the disputed boundary was not tried or determined in that earlier proceeding [677-680]; further, the judge properly relied on extrinsic evidence (in the form of abutter calls in a deed in the chain of title of a third party) to determine the location of the disputed boundary, where the deed descriptions in both parties' chains of title were ambiguous on the issue [680-682].

CIVIL ACTION commenced in the Land Court Department on September 26, 1994.

A motion for summary judgment was heard by *Robert V. Cauchon,* J., and the case was heard by *Karyn F. Scheier,* J.

*Lee H. Kozol* for the defendant.

*Gordon M. Orloff* for the plaintiff.

GRASSO, J. When James Hall died intestate in 1735, all of his real property in Raynham devolved to his sons Edmund and David. After more than two hundred years of mesne convey-ances, the plaintiff, Mary Jane Paull, as trustee of SMND Realty Trust (Paull) — who traces her chain of title to Edmund — and

[1] Of the SMND Realty Trust.
[2] Of the Pine Realty Trust.

the defendant, Kelly C. Kelly, as trustee of Pine Realty Trust (Kelly) — who traces her chain of title to David — are involved in a boundary dispute that bears on the ownership of a 7.7 acre parcel lying between their respective properties.[3] A sketch of the relevant parcels, attached as an Appendix to this opinion, provides immediate visual context for the problem. Paull owns the property directly to the south of the disputed parcel (shown as the Huldah Hall farm/Nathan Williams property). Kelly owns the property to the north of the disputed parcel (shown as the Job Hall property).

On appeal from a declaratory judgment in favor of Paull, Kelly argues that the Land Court judge erroneously fixed the location of the disputed property line some 393 feet north of where Kelly believes that the boundary should be. In particular, she maintains that (1) an unsuccessful attempt by Paull's predecessor in title to fix that boundary in a previous registration proceeding bars the present action through principles of issue or claim preclusion; and (2) the Land Court judge improperly relied on abutter calls[4] in a deed in the chain of title of a third party (shown as the Perez Hall property) to determine the location of the disputed boundary. We affirm.

1. *Background.* The parties agree that Paull's property is bounded on the north by Kelly's land and on the west by the Perez Hall property and that Kelly's property is bounded on the south by both Paull's land and the Perez Hall property. The present controversy centers on Paull's contention, accepted below, that the boundary shared by the parties joins with the undisputed northern boundary of the Perez Hall property to form a relatively straight line across the southern edge of Kelly's property (represented on the diagram as the northern boundary

---

[3]The instant problem might have been avoided had Edmund and David made a clear record of how they divided their interest in their father's property. However, the manner of their division has been lost in the "dust bin of history." *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 457 (1984). Lacking that logical starting point, the parties resorted, of necessity, to deeds and probate records from later points in their respective chains of title to support their positions.

[4]Abutter calls are statements in a deed that describe the landowner's parcel by reference to the owners of adjoining properties. See 1 Patton and Palomar, Land Titles § 128, at 331-332 (3d ed. 2003); 14 Powell, Real Property § 81A.05[2], at 85 (1999).

of the disputed parcel). Although Kelly has previously argued that this boundary should be fixed elsewhere,[5] her contention here is simply that Paull has not carried the burden of proving that the boundary between her land and Paull's is the northern boundary of the disputed parcel. If the Land Court judgment stands, Paull's claim of ownership in the disputed parcel will be established as superior to Kelly's; otherwise, ownership of the parcel will remain unresolved as between Paull and Kelly.

None of the ancient deeds in either Kelly's or Paull's chain of title precisely fixes their shared boundary. Instead, the deeds describe the properties primarily by estimations of acreage and abutter calls. Paull begins the analysis of her chain of title by looking to the will of Huldah Hall (Edmund's daughter), who died in 1834 and devised "to Asa Hall all my homestead farm where I now live." The probate inventory of Huldah Hall described the farm as "containing by estimation Sixty Acres." One year later, Asa Hall granted to Nathan Williams "the same farm that was given me by will of Huldah Hall . . . and contains fifty acres be the same more or less."[6] The deed from Asa Hall to Nathan Williams also identified Joseph Hall, who then owned what is now the Perez Hall property, as the only western abutter. The parties do not dispute that modern surveying techniques would calculate the area of the original Huldah Hall farm to be 58.6 acres if Paull's version of the disputed boundary is correct. Alternately, if Kelly's suggested placement were utilized, the area would total 50.4 acres.

2. *The registration proceeding and declaratory judgment action.* In 1987, Paull's predecessors in title sought to establish ownership of the disputed parcel through a registration proceeding. After two days of trial, the judge issued a decision in which he concluded:

> "I find that [Paull's predecessors] have not met their burden of proof in determining the northerly boundary of

[5]Kelly has argued at various times that the boundary actually exists some 393 feet to the south of where Paull locates it (shown on the diagram as the southern boundary of the disputed parcel). However, Kelly now concedes that she cannot establish the boundary in that location.

[6]The discrepancy in acreage remains unexplained.

the locus and that their petition must be and hereby is dismissed. . . .

"In so finding, I find only that [Paull's predecessors] have not proven title to the disputed parcel. I make no finding as to [Kelly's predecessors'] claim of title other than as herein stated, to such parcel and suggest to all parties concerned that should the disputed parcel be the matter of further litigation, such litigation should probably notice the appropriate Hall heirs as possible parties in interest."

The judgment provided:

"ADJUDGED and ORDERED that [Paull's predecessors] have not at this time provided sufficient credible evidence to prove the northerly boundary of said parcel and therefore have not proven title to said parcel as alleged. Accordingly, the . . . complaint is hereby dismissed."

Subsequently, Paull initiated the present action,[7] seeking a declaratory judgment that, at least as to Kelly, would establish the disputed boundary favorably to Paull.[8] Kelly moved for summary judgment, arguing that issue or claim preclusion served to bar the action, based on the prior unsuccessful action for registration. The same Land Court judge who had presided over the registration proceeding denied Kelly's motion, reasoning that while Paull's predecessors had been unable to meet

---

[7]In the interim, Paull brought an action to try title that was dismissed by the Land Court. That action is irrelevant for purposes of this appeal.

[8]As recognized by the Land Court judge, a decree of land registration is fundamentally different from a declaratory judgment implicating land ownership. If Paull had successfully registered title to the disputed parcel, the law would treat her claim of ownership as superior to a claim made by *any* other person. See G. L. c. 185, § 45 (establishing that a registration decree "shall be conclusive upon and against all persons"); *Deacy* v. *Berberian*, 344 Mass. 321, 328 (1962), quoting from *Malaguti* v. *Rosen*, 262 Mass. 555, 567-568 (1928) (observing that registration is generally "conclusive upon every one"). Conversely, Paull's success in this declaratory judgment action means only that the law treats her claim of ownership as superior to Kelly's. See G. L. c. 231A, § 8, inserted by St. 1945, c. 582, § 1 ("When declaratory relief is sought . . . no declaration shall prejudice the rights of persons not parties to the proceeding").

their burden of proof for registration, "clearly such finding did not determine the boundary at all, certainly not in favor of any party."

Subsequently, this matter came to trial before a different Land Court judge. In the course of expert testimony, Paull introduced an 1839 deed in the Perez Hall property chain of title (Perez Hall deed) that was in neither Paull's nor Kelly's chain of title.[9] The Perez Hall deed described the northern boundary of the Perez Hall property as running eastward along the boundary shared with Kelly's property "to land of Nathan Williams," a predecessor in title to Paull. The Perez Hall deed further described an eastern boundary that ran south "thence in Williams line . . . one hundred fifty six rods to the road." According to these descriptions, the Perez Hall property and Paull's predecessor shared an eastern boundary of a defined length that originated at the northwest corner of the disputed parcel, ran along the entire western edge of the disputed parcel, and continued to the road.

Relying substantially on these abutter calls, the trial judge ruled that the Perez Hall deed established the disputed boundary favorably to Paull. Central to the judge's decision was her determination that despite the failure of extensive oral testimony[10] to assist in fixing the boundary, the abutter calls in the 1835 deed from Asa Hall to Nathan Williams and the Perez Hall deed provided corroborating evidence that "the [d]isputed [p]arcel was originally part of [Paull's property] and was never part of [Kelly's property]." A judgment issued declaring that the northern boundary of the disputed parcel was the boundary between Paull's and Kelly's parcels, in effect placing ownership of the disputed parcel in Paull.

3. *Issue and claim preclusion.* Kelly contends that the prior

[9]Although a "deed research plan," which included an abstract of the Perez Hall deed, was before the Land Court in the registration proceeding, there is no indication that the Perez Hall deed and the abutter calls therein were part of the evidence considered by the judge, who concluded that there was insufficient evidence for registration.

[10]This included testimony from experts in geology, archeological geology, and geoarcheology as to the use of paths, ways, roads, stone walls, fences, and stone markers to mark property boundaries. Although many of these were present along and in the area of the disputed boundary, the testimony was inconclusive as to the boundary.

registration proceeding established conclusively that the northern boundary of the disputed parcel does not exist in the location advocated by Paull. As a result, Kelly maintains, res judicata principles bar Paull from again attempting to fix that same boundary to the disputed parcel in this action. This contention misconstrues what was resolved in that prior failed attempt to register title and the effect of that action on subsequent actions to resolve the boundary.

Whether that prior failed attempt has preclusive effect is determined by G. L. c. 185, § 44, as amended by St. 1981, c. 658, § 24, which provides in pertinent part: "[I]f the court finds that the plaintiff has not title proper for registration, a judgment shall be entered dismissing the complaint, and such judgment may be ordered to be without prejudice, in whole or in part, but unless so ordered it shall bind the parties, their privies and the land in respect of any issue of fact which has been tried and determined." After examining the judge's decision and the judgment dismissing the complaint in the registration action, we conclude that the complaint was not dismissed with prejudice and that the location of the disputed boundary was not "tried and determined" in that proceeding. Accordingly, G. L. c. 185, § 44, does not bar Paull from seeking to determine the location of that boundary in this action.

General Laws c. 185, § 44, makes clear that an unsuccessful registration proceeding can have two possible effects — one that is preclusive and one that is not. If the judge dismisses the action without prejudice, the failed attempt at registration has no preclusive effect and will not bar either a subsequent attempt at registration or any other method to determine or declare title. If the judge dismisses the action with prejudice, the statute precludes relitigating issues of fact that were "actually tried and determined" in the registration proceeding.

Here, the prior complaint for registration was dismissed "without prejudice," even though the decision and judgment did not expressly use those talismanic words. The judge's decision focused on the inability of *any* party to prove the northern boundary of the disputed parcel and he observed that any future litigation should provide notice to other putative parties in interest. The judgment states that Paull's predecessors in title

"have not *at this time* provided sufficient credible evidence to prove the northerly boundary of said parcel" (emphasis supplied).[11]

Even were we to assume, arguendo, that the express words "without prejudice" must appear in the judgment, the statute still would not bar Paull from seeking to establish the disputed boundary here. When a boundary line is in controversy, it is "a question of fact on all the evidence, including the various surveys and plans . . . where the true line originally ran, and was to be established." *Hurlbut Rogers Mach. Co.* v. *Boston & Me. R.R.*, 235 Mass. 402, 403 (1920). See *Baker* v. *Miller*, 284 Mass. 217, 222-223 (1933). Although the location of the disputed boundary was a fact at issue in the registration proceeding, G. L. c. 185, § 44, only precludes relitigation of a factual issue that was "actually tried and determined." Compare *Lombard* v. *United States*, 194 F.3d 305, 312 (1st Cir. 1999) (interpreting § 44). The prior attempt at registration failed because, at that time, Paull's predecessor in title did not meet the requisite burden of proof to establish the boundary, not because the boundary was fixed elsewhere.[12] Compare *McCarthy* v. *Oak Bluffs*, 419 Mass. 227, 232, 236 (1994) (subsequent suit precluded when earlier registration fully considered and resolved factual question of relevant boundary's location). Far from concluding that the disputed boundary existed in a particular location, the judgment in the registration action simply left resolution of that question of fact for another day.[13] See *Hunter* v. *Cayer*, 61 Mass. App. Ct. 725, 729 & n.5

---

[11]Indeed, the judge's later determination that the registration proceeding had no preclusive effect on this declaratory judgment action, serves, at least, as indication that the judge had not intended to dismiss the registration complaint with prejudice.

[12]The judge made precisely this point in his order denying summary judgment when he held that the registration did not have preclusive effect because "[q]uite clearly such finding did not determine the boundary at all, certainly not in favor of any party."

[13]*Dugan* v. *Wellock*, 348 Mass. 778 (1964), the only case relied on by Kelly involving G. L. c. 185, § 44, is inapposite. In considering the effect of a prior dismissed petition for registration that was based on a claim of adverse possession, the court observed that the prior registration proceeding established that "as between the parties to that petition and their privies," the original

(2004) (litigant's failure to demonstrate ownership of title interest did not compel conclusion that litigant held no title interest).

4. *Abutter calls in the Perez Hall deed.* Kelly next argues that the judge erred in first considering, and then giving disproportionate weight to, abutter calls in the Perez Hall deed. We disagree.

Rules of deed construction provide a hierarchy of priorities for interpreting descriptions in a deed. Descriptions that refer to monuments control over those that use courses and distances; descriptions that refer to courses and distances control over those that use area; and descriptions by area seldom are a controlling factor. See *Holmes* v. *Barrett*, 269 Mass. 497, 499-500 (1929); *Ryan* v. *Stavros*, 348 Mass. 251, 258-259 (1964). Moreover, when abutter calls are used to describe property, the land of an adjoining property owner is considered to be a monument. *Holmes* v. *Barrett*, *supra* at 500; *Ryan* v. *Stavros*, 348 Mass. at 259. Here, because the trial testimony had "failed to assist" in determining the true location of the disputed boundary, the judge's decision rested, ultimately, on an interpretation of various deeds. When the judge's decision is based on an interpretation that arises "solely from the documentary evidence," an appellate court has the "same interpretive powers as the Land Court judge." *Darman* v. *Dunderdale*, 362 Mass. 633, 637 (1972). See *Lowell* v. *Boston*, 322 Mass. 709, 715 (1948).

Applying these principles, we agree with the Land Court judge that the deeds in both Paull's and Kelly's chain of title are facially neutral regarding ownership of the disputed parcel. With respect to descriptions that utilize monuments, various deeds describe Paull's land as bounded on the west by the Perez Hall property, and on the north by Kelly's property. At the same time, various deeds describe Kelly's parcel as bounded on the south by the Perez Hall property. These abutter calls in Paull's and Kelly's direct chains of title depict a situation where either Paull or Kelly could own the disputed parcel. Courses and

litigant's "attempted acts of dominion gave him no title to the locus." *Dungan* v. *Wellock, supra*. A conclusion that specific acts of dominion do not establish adverse possession is fundamentally different from the situation here, where the prior registration did not conclusively locate the disputed boundary.

distances are unhelpful in determining the boundary because deeds in Paull's and Kelly's chains of title do not use that descriptive method.

Besides taking note of the rule that area seldom controls deed interpretation, we observe that the estimations of area in the pertinent documents do not prove or disprove Paull's claim of ownership. As previously noted, Huldah Hall's 1834 will left Edmund Hall's original farm, "containing by estimation Sixty Acres," to Asa Hall; and in 1835, Asa Hall conveyed "the same farm" to Nathan Williams by deed but, without explanation, described the estimated area as fifty acres, an acreage repeated in subsequent deeds. Paull's contention that the farm contained 58.6 acres resembles the acreage in the 1834 will. Kelly's view that the farm contained 50.4 acres resembles the subsequent estimations. In both the registration and this action, the judges considered reliance on area, but determined that several possible but unproven hypotheses made it an inapposite basis for judgment. We agree, particularly because the "more or less" language suggests that the area call is not exact and that the grantor did not intend the acreage call to be a reliable measure of what was conveyed. See *Overly* v. *Treasurer & Recr. Gen.*, 344 Mass. 188, 192 (1962) (in the usual case, "[u]se of the words 'about,' 'more or less,' and the like, to qualify a statement of quantity indicates that the quantity of land is not the essence of the contract").

Where the deed descriptions in both Paull's and Kelly's chains of title are ambiguous regarding the location of their common boundary (and hence ownership of the disputed parcel), the Land Court judge properly considered the abutter calls in the Perez Hall deed as extrinsic evidence.[14] See *Temple* v. *Benson*, 213 Mass. 128, 132-134 (1912); *Baker* v. *Miller*, 284 Mass.

---

[14]Nor was consideration of the Perez Hall deed improper for any other reason suggested by Kelly. Regardless of whether that deed was proffered in some form in the prior registration, it was properly considered here as relevant evidence on the unresolved factual question of where the disputed boundary should be located. The rules of evidence also pose no obstacle to admissibility, because recitals in ancient deeds between strangers are competent evidence to prove the location of a disputed line. *Hathaway* v. *Evans*, 113 Mass. 264, 267 (1873). See *Temple* v. *Benson*, 213 Mass. 128, 133 (1912). Contrary to Kelly's assertions, the Perez Hall deed is not untrustworthy. Substantial property rights hinged on whether that deed correctly described the Nathan

at 220; *Ellis* v. *Wingate*, 338 Mass. 481, 485 (1959); *Ryan* v. *Stavros*, 348 Mass. at 259-260 (resort to extrinsic evidence is appropriate to assist interpretation of ambiguous deed descriptions). The abutter calls in the Perez Hall deed resolve any ambiguity as to the location of the disputed boundary in favor of Paull. More precisely, these abutter calls establish that northern boundary because they (1) describe the undisputed northern boundary of the Perez Hall property as running eastward along Kelly's southern property line "to the land of Nathan Williams"; (2) identify Nathan Williams as the *sole* eastern abutter of the Perez Hall property[15]; and, most importantly, (3) accurately measure the course of the shared eastern boundary that originates at the northwest corner of the disputed parcel and then runs southerly a defined distance (156 rods) to the road.[16] Accordingly, entry of a declaratory judgment in favor of Paull was proper.

*Judgment affirmed.*

---

Williams property as a monument with a northern boundary in the depicted position. If the true northern boundary of the Williams property were actually more to the south, as Kelly contends, the northern boundary described by the Perez Hall deed would have slanted southerly and resulted in the Perez Hall property containing significantly less land.

[15]This description exactly matches the description in a contemporaneous deed from Paull's chain of title that identified the owner of the Perez Hall property as the sole western abutter for Paull's predecessor.

[16]Kelly now argues that this calculation is inaccurate. However, the Land Court judge found the length to be within allowable error based on the testimony of a land surveyor, E. Otis Dyer. We accept this finding of the Land Court judge as it was not clearly erroneous.