## INHABITANTS OF COHASSET *vs.* MARY B. MOORS.

Norfolk.    November 16, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Way*, Public, discontinuance of, laying out. *Jerusalem Road. Cohasset. Adverse Possession. Disseisin. Limitations, Statute of. Evidence*, Presumptions and burden of proof. *Land Court. Practice, Civil*, Exceptions.

Where county commissioners alter and improve a road in a town and define it upon a plan by metes and bounds under statutory authority, any part of the former way outside the boundaries thus defined is discontinued as a public way, and, where such discontinued parts of the way are upon land owned by the town in fee, the title of the town to those parts of the land becomes like that of any private owner.

In 1670 the town of Hingham, in making a division and allotment of lands in what is now the town of Cohasset, reserved land for highways at various places including a reservation for that purpose along the shore where now is the highway known as the Jerusalem Road. There were thirty acres of land in the portion reserved for the highway on this part of the shore, which along the sea was rough, rocky, irregular and indented. For five years beginning in 1718 the land reserved for this highway was let by the town for six pounds a year. In 1737 a road three rods wide was laid out there by a committee and was accepted by the town. *Held*, that in view of the character of the shore it was not to be presumed that the original reservation was intended to establish a legal highway, and that the letting of the land by the town was inconsistent with its being at that time an established highway, but that, if there had been a highway outside the road three rods wide before this was laid out, the establishment of that road would have discontinued the portions of the way outside its boundaries.

In proving a title to land acquired by adverse possession for more than twenty years, it is not necessary for the claimant to show when the owner of the land was disseised. It is only necessary to show that there was a disseisin at some time, and that the disseisin continued without interruption for twenty years or more.

At the trial of an issue as to the title to land claimed by adverse possession for more than twenty years, it is not the duty of the presiding judge to instruct the jury that one claiming a title by adverse possession "must prove a strong case," in order to prevail. Such an one has only to prove his case by a fair preponderance of the evidence.

The refusal by a presiding judge to instruct the jury, that the evidence before them is not sufficient to warrant the finding of a certain fact, is made immaterial by a finding of the jury against the existence of the alleged fact.

The statute of limitations contained in R. L. c. 202, § 30, which allows the Commonwealth only twenty years after its disseisin within which to bring an action for the recovery of land, applies to a petition by a town to establish its title to land which is claimed by the respondent under an alleged title by adverse possession for more than twenty years.

St. 1905, c. 288, provides that when an appeal is taken from the Land Court to the Superior Court the report of the judge of the Land Court who rendered the decision appealed from shall be *prima facie* evidence as to the matters therein contained. Upon a petition by a town for the registration of its title to certain land claimed by the respondent under a title alleged to have been acquired by adverse possession of the land for more than twenty years, the judge who heard the case in the Land Court found that the town formerly had owned the land and that the respondent had acquired a title to it by adverse possession. On appeal to the Superior Court the jury upon one of the issues presented to them made the same finding. The town excepted to a portion of the judge's charge on the ground that it was erroneous as to the effect to be given to the report of the decision of the judge of the Land Court. The portion of the charge excepted to, when taken strictly and understood properly, was held by this court not to be erroneous in law, but it was said by the court, that it would have been better if the judge had told the jury to consider the whole evidence together, including the decision of the Land Court, and, if they found that the claims of the parties balanced evenly, to decide against the party that had the burden of proof, that is to say, against the respondent who had the burden of proving a title by adverse possession.

A bill of exceptions cannot be sustained unless the excepting party shows affirmatively that there was error at the trial from which he may have suffered.

KNOWLTON, C. J. This is a petition, by the town of Cohasset, for the registration of the title to land lying between the Jerusalem Road and the sea. The petitioner avers that it owns the land in fee simple, and that it also owns in fee simple the land "within the limits of the highway or public way to the middle line thereof upon which the said land described is bounded, subject to the right of the public to use the same as such," and that it desires to have the line of the way determined. After a finding by the Land Court that the town formerly owned the land in fee simple, and that the respondent, Mary B. Moors, had acquired a title to it by disseisin, a trial was had, upon an appeal, in the Superior Court upon two issues, on one of which the finding of the jury was in favor of this respondent. This issue was as follows: "Has the respondent, Mary B. Moors, gained title to the locus, by adverse possession of herself or her predecessors in title, against the town of Cohasset?" Upon the other issue, which is no longer material, the finding was for the petitioner. A bill of exceptions to rulings and refusals to rule in the Superior Court was allowed in favor of each party; but the respondent does not care to press her exceptions if the exceptions of the petitioner are overruled.

In a division and allotment of lands in this vicinity in 1670,* there was a reservation of land for highways in various places, and, among others, along the shore, between the nearest lot laid out for an individual and the sea, which reservation covered the locus.  Much evidence was introduced of records and deeds from the time of this division to 1872, when the land was purchased by the respondent's husband, through whom she derived her title.  The records show that the land reserved for this particular highway along the shore was let by the town for five years, beginning in 1718, for six pounds per year.  The first evidence of a formal laying out of the way was in 1737, when the town accepted this way as laid out, three rods wide, by a committee appointed for the purpose, which location the bill of exceptions says " was an early lay-out of Jerusalem Road."  The petitioner contends that, from the time of the original reservation in 1670, the locus became a legal highway, dedicated to public use as such; while the respondent contends that it was merely reserved, so that a highway might be put through it whenever the town chose to lay one out, and that no part of the locus had ever been laid out previously, or used as a way.

The bill of exceptions contains the following statement: " In 1867 the county commissioners altered, improved and directed repairs on Jerusalem Road, and by courses, metes and bounds located said alterations as defined in a plan, which may be referred to.  The locus is now bounded as follows: North by the land of Ellen Kendall, sometimes called the ' Sea Pasture '; South by the estate of Matthew Luce, East by the sea, and West by the present line of Jerusalem Road."  We must assume that this action of the county commissioners was under the statutes, and in all respects legal.  If so, it established the boundaries of ·

---

* The division and allotments of lands referred to were made by votes of the inhabitants of the town of Hingham at town meetings.  The bill of exceptions contained the following statement: " Hingham was first settled shortly after 1630 and was originally called Bear Cove.  The name was changed to Hingham in 1635.  Its boundaries with Weymouth were fixed in 1635 and 1638, and with Plymouth in 1638, and it was authorized to make hay in the Cohasset meadows in 1639 and was granted the meadows north of the Plymouth line on May 13, 1640, the said meadows including the present town of Cohasset.  The Cohasset lands were not divided among the inhabitants of Hingham until 1669."

the highway; and if there was any part of the former way which was outside of these boundaries, it discontinued such part. *Bennett* v. *Clemence*, 6 Allen, 10, 14, 17. It follows that, at least since 1867, the title of the town has been like that of any other private owner.

The judge * ruled, at the request of the respondent, that there was no evidence that the locus was any part of the highway subsequent to 1872. This was plainly right. He also ruled that there was no evidence that it was any part of a highway previous to 1872. This was certainly right, so far as it pertained to the years immediately preceding 1872. Whether it was right as to the earlier period was immaterial; for the only adverse possession relied on by the respondent, under this issue, was that of herself and her husband during the period of ownership after his purchase in February, 1872. Moreover, by their answer to the second issue, the jury distinctly negatived the acquisition of any title by adverse possession by Allen Nichols, or any of his ancestors or predecessors, previous to 1870.

.But if we consider the evidence from the earliest times, we are of opinion that the judge was right in his ruling. The locus was the rough, rocky, irregular, indented shore of the sea; and, in a proceeding for the division of land and the distribution of lots, it is not to be presumed that a reservation of a strip along the shore for a highway legally established this land among the cliffs as a highway, and devoted it to public use as such. There were thirty acres of land in the portion reserved for the highway on this part of the shore. The subsequent investigation of a committee, under a vote of the town, with a report as to the

---

* The presiding judge was *Crosby*, J. The issues tried before him were as follows:

" 1. Has the respondent, Mary B. Moors, gained title to the locus by adverse possession of herself or her predecessors in title against the town of Cohasset, petitioner?

" 2. Did Allen Nichols, or any of his ancestors or predecessors, acquire title to the locus by adverse possession previous to 1870? "

On the first issue the jury found that the respondent, Mary B. Moors, had gained title to the locus by adverse possession against the town of Cohasset, petitioner. On the second issue the jury found that neither Allen Nichols, nor any of his predecessors, had acquired title to the locus previous to 1870.

sums for which the land could probably be sold or rented, and the subsequent renting of this land for five years, are inconsistent with its then being an established highway.  Then the laying out of the road three rods wide in 1737, by a committee, and the acceptance of it as a way for the town's use, indicate that the original reservation of the land did not constitute it a highway. If there had been a highway outside of the three rods, before this laying out, the establishment of the road would have discontinued the portion outside of its boundaries.  The locus was outside of the three rods.  There was no error in this ruling.

It follows that all the petitioner's requests as to the law of adverse use, when the use relied on constitutes a public nuisance and when a locus is appropriated to a public use for governmental purposes, are inapplicable.  We have the ordinary case of land of a proprietor used by another person who claims thereby to have acquired a title by disseisin.

The fourteenth request * was rightly refused.  It was not necessary to show when the claimant disseised the town.  It was only necessary to show that there was a disseisin at some time, and that the disseisin continued without interruption twenty years or more.

It was not the duty of the judge to instruct the jury that one

---

* The thirteenth, fourteenth, sixteenth, twenty-third and twenty-fourth rulings requested were as follows:

"13. Every presumption is in favor of the true owner, where the adverse party claims by adverse possession, and the party so claiming must prove a strong case, in order to recover.

"14. The evidence does not show when John B. Moors disseised the town of Cohasset from the locus, and the burden of proof is upon the respondent to show when that was accomplished."

"16. There is no evidence that locus was ever discontinued as a highway, or part of the highway."

"23. There is not sufficient evidence to warrant the jury in finding that Allen Nichols or any of his ancestors, or predecessors, acquired and had title to the locus, previous to 1870, by adverse possession.

"24. If the entry by the town of Cohasset in the sewer proceedings of 1882 bore upon its face an intention by the town to resume possession of the locus, the verdict must be for the petitioners, unless the respondent shows another disseisin, and proves by a preponderance of the evidence all the essential elements of adverse possession, for the necessary statutory period beginning from the time of disseisin, subsequent to entry."

claiming a title by adverse possession "must prove a strong case, in order to recover." He has only to prove his case by a fair preponderance of the evidence.

The sixteenth request was rightly refused. The proceedings of the county commissioners in 1867 were evidence of a discontinuance of that part of the highway, if there was any part, outside of the boundaries then established.

The refusal to grant the twenty-third request has become immaterial by reason of the verdict of the jury in favor of the petitioner on that point.

The general instructions as to the nature and effect of different kinds of use of such property by the respondent and those claiming under her, and by other persons acting independently, were correct and sufficient. When the respondent was in possession of the land by disseisin, the effect of trespasses or entries upon the land by strangers, in reference to its interruption of her possession, was to be judged in the same way as if she had been the owner. So far as the twenty-fourth request was intended to present the doctrine that the respondent could not maintain her title by adverse possession if her possession was interrupted by the owner within the period relied upon, it was given, in substance and effect, in different parts of the charge. An interruption of her possession at the time of laying the sewer was treated as fatal to a claim of title through possession for a period of twenty years covering time both before and after the interruption. The principles by which to determine whether the laying of the sewer was or was not an interruption were sufficiently stated.

The statute of limitations that appears in the R. L. c. 202, § 30, which allows the Commonwealth only twenty years after its disseisin within which to bring an action for the recovery of lands, is applicable to this case.

The petitioner contends that the charge was erroneous in reference to the effect given to the report of the decision of the Land Court. By the St. 1905, c. 288, this report is made *prima facie* evidence as to the matters therein contained. The judge so instructed the jury. He also instructed them that on both issues the burden of proof was on the respondent. The only issue to which these exceptions relate is that on which both

the judge of the Land Court and the jury found in favor of the respondent. The petitioner contends that the effect of the charge was to change the burden of proof, and put it upon the petitioner. The instructions were as follows: " We are to treat the findings of the judge of the Land Court as *prima facie* evidence that that finding is correct, and unless you should find upon all the evidence in this case that he was wrong, then it would be your duty to sustain that finding, and to find as he did, because it is *prima facie* evidence that what he found was correct, and these findings made by him should stand unless you are able to say and find upon all the evidence in this case which has been submitted at this trial that those findings were wrong and that the finding upon the evidence here should be different from that made by him. . . . The judge of the Land Court is a man who deals largely with the registration of titles and it is for you to say how much weight should be given to his opinion. You are to give to it such value as you think it is entitled to, having in mind the statute which says that it shall be *prima facie* evidence, and as you know that means that if on all the evidence presented here you are not able to find that the findings should be different, then you should sustain that finding. That is, you should give to the finding that weight which the law gives to it." If these instructions were to be construed as meaning that, unless the jury found upon the whole evidence that its preponderance was in favor of the petitioner, they should follow the Land Court and find for the respondent, it would be erroneous; for it would put the burden of proof upon the petitioner. That a certain fact or finding is made by the statute *prima facie* evidence does not change the burden of proof. It determines the verdict or finding if no other evidence is introduced. But the moment that opposing evidence is received, the case is to be determined upon all the evidence — the *prima facie* evidence and all the other evidence — and the question is whether the weight preponderates in favor of the party having the burden of proof. *Commonwealth* v. *Williams*, 6 Gray, 1. *Wyman* v. *Whicher*, 179 Mass. 276. *Morrison* v. *Richardson*, 194 Mass. 370. If the party in whose favor *prima facie* evidence is introduced has the burden of proof, the other party is not bound to introduce evidence which outweighs the

*prima facie* evidence; but if he introduces anything in opposition, the question is whether the evidence in favor of the party having the burden of proof, including that which was at first *prima facie* evidence, outweighs that upon the other side.

The instructions on this point were not so clear as was desirable. We are not certain that they were rightly understood. But taken strictly, we think they were not erroneous in law. To find differently from the judge of the Land Court, the jury, under the instructions, were obliged to conclude that the findings were wrong. If, upon the whole evidence, including the report, they found that the two sides of the question hung in even balance, they would find for the petitioner, because the respondent had not sustained the burden of proof; and they would thus decide that the judge of the Land Court was wrong in holding that the burden of proof was sustained. So the charge required them to go no further, in order to reverse the decision, than to find that the evidence was evenly balanced, and that therefore the respondent had not sustained the burden. It did not require them to put the burden of proof upon the petitioner, and to decide that the evidence in the town's favor outweighed that in favor of the respondent. In this view, the charge was strictly accurate, although it was in such form as to be liable to be misunderstood. It would have been better if the judge had told the jury to consider the whole evidence together, including the decision of the Land Court, and if they found the claims of the parties evenly balanced, to decide against the party that had the burden of proof.

As a bill of exceptions cannot be sustained unless the excepting party shows affirmatively that there was error at the trial, from which, presumably, he has suffered, the verdict must stand.

*Exceptions of the petitioner and of the respondent overruled.*

*T. Mannix,* (*J. Mannix* with him,) for the petitioner.
*W. H. Brown,* for the respondent.