TOWN OF SANDWICH *vs.* PAUL E. QUIRK & another[1]
(and a companion case[2] ).

Suffolk. November 8, 1990. - February 21, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Adverse Possession and Prescription. Municipal Corporations*, Tax title property, Adverse possession. *Real Property*, Adverse possession.

A taking by a municipality of certain land for nonpayment of taxes, as to which the Land Court entered decrees foreclosing the record owners' rights of redemption, operated to break the continuity of the running of a claim of adverse possession; the twenty-year statute of limitations would start to run against the municipality, if it runs at all, when the adversely possessed land was taken for nonpayment of taxes. [383-385]

CIVIL ACTION commenced in the Superior Court Department on August 29, 1986.

CIVIL ACTION commenced in the Land Court Department on January 29, 1987.

The cases were consolidated for trial and were heard by *Marilyn M. Sullivan*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David A. Capobianco* (*Frederick A. Busconi* with him) for the defendants.

*Everett J. Marder* for the plaintiff.

---

[1]Beatrice Quirk.

[2]The two actions assert the town's ownership of certain land. One was brought in Superior Court in Barnstable County by the selectmen on behalf of the inhabitants of the town. The other was brought in the name of "Board of Selectmen, Town of Sandwich" in the Land Court in the nature of a writ of entry under G. L. c. 237, § 1. The Chief Administrative Justice assigned a judge of the Land Court to the Superior Court to decide the Superior Court action.

WILKINS, J. These actions concern the ownership of four adjacent parcels of land in Sandwich, each of which, at various dates, the town took for the nonpayment of taxes and as to which, in the 1970's, the Land Court entered decrees foreclosing the record owners' rights of redemption. The defendants (Quirks) assert that they have acquired title to the parcels by adverse possession.

The judge ruled that the town was entitled to possession of two parcels and to an injunction barring the Quirks from using the remaining two parcels for access to the first two. She accepted the town's position that the tax takings, followed by the foreclosure of the record owners' rights of redemption, interrupted the running of the twenty-year period of adverse possession. If either or both of those events broke the continuity of adverse possession, it is agreed that the Quirks have not adversely possessed or used the subject parcels for a sufficient period to assert rights based on adverse possession or prescription.[3] As a result of her ruling that there could be no adverse possession as a matter of law, all factual issues concerning adverse possession were eliminated from the trial. Judgments were entered for the town. We transferred the Quirks' appeal to this court. We consider and decide only the issue on which the judge rejected the adverse possession claim.[4] We affirm the judgments.

The judge did not reach the question whether, as a matter of law, title could be acquired by adverse possession of land

---

[3]The judge noted that, on the facts, it did not matter whether the tax foreclosure proceedings against the record owners alone cut off any party who claimed title to the land adversely or whether the decrees foreclosing the record owners' rights of redemption did so. She suggested, however, that the tax foreclosure proceedings themselves would cut off adverse claims.

[4]That is the only issue the Quirks argue that we need to decide. The Quirks make no separate argument based on constitutional rights or on the town's rejection of their attempt to pay taxes on the subject property, to which they apparently knew they did not have record title. The issue of the right of an adverse possessor to pay real estate taxes assessed against the adversely possessed land is not before us. See G. L. c. 60, § 60 (1988 ed.), concerning the rights of a nonowner who "rightfully" pays taxes assessed against land.

owned by a town through tax title proceedings, followed by foreclosure of rights of redemption. She assumed, for the purpose of analysis, that the Quirks could properly possess adversely to the town, citing *Cohasset* v. *Moors*, 204 Mass. 173 (1910), and *Bates* v. *Cohasset*, 280 Mass. 142 (1932). The parties discuss this issue in their briefs. The Quirks do not cite G. L. c. 260, § 31 (1988 ed.), which states a general rule that the Commonwealth and its political subdivisions may lose rights to land through twenty years of adverse possession. That section states an exception, which is set forth in the margin,[5] for municipal (and other governmental) land held for a "public purpose." The town discusses § 31 and says that it is a question of fact, not resolved below, whether the town holds the land in question for a public purpose. The town, therefore, does not contend that we could affirm the lower court on the ground that land taken for nonpayment of taxes is held for a public purpose and hence the Quirks could not adversely possess the land.[6]

The judge saw an instructive analogy between the town's Land Court action to foreclose the record owners' rights of redemption and a petition to register title to land. There is a similarity between the two proceedings in that, in each, the plaintiff is seeking by judicial decree, after notice, to obtain a

---

[5]"[P]rovided, further, that this section shall not bar any action by or on behalf of the commonwealth, or any political subdivision thereof, for the recovery of land or interests in land held for conservation, open space, parks, recreation, water protection, wildlife protection or other public purpose."

[6]The town does not cite G. L. c. 60, § 77 (1988 ed.), which provides that, after a town forecloses "rights of redemption under a tax title or taking, as hereinbefore provided, the land shall thereafter be held . . . for municipal purposes." The town has not argued, therefore, that, as a matter of law, land held for municipal purposes, within the meaning of G. L. c. 60, § 77, is land held for a public purpose, within the meaning of those words in G. L. c. 260, § 31, and that, consequently, § 31 provides no bar to the town's assertion of its ownership of the disputed land. Compare *Johnson* v. *Burgeson*, 25 Wash. 2d 269, 272 (1946) (tax foreclosure destroys possessory titles because land is held in governmental and not proprietary capacity), with *Goldman* v. *Quadrato*, 142 Conn. 398, 403-404 (1955) (land acquired by city on foreclosure of tax lien not devoted to public use).

clearly defined title to the land. The analogy, however, is not perfect. Rights in registered land, in derogation of the title of the registered owner, may not be acquired by prescription or adverse possession. G. L. c. 185, § 53 (1988 ed.). Consequently, the filing of a petition to register title to land immediately interrupts adverse possession of that land. *McMullen* v. *Porch*, 286 Mass. 383, 388-389 (1934). See *Snow* v. *E.L. Dauphinais, Inc.*, 13 Mass. App. Ct. 330, 336 (1982). There is no comparable statute, however, that states explicitly that there can be no adverse possession against a municipality's interest in land once the record owner's right of redemption has been foreclosed (or at some earlier date).[7] The comparison of the foreclosure of the right of redemption and a petition to register title to land is instructive but not conclusive.

We must decide whether the tax takings and foreclosure decrees broke the continuity of the Quirks' adverse possession, thus in effect turning the adverse possession clock back to zero. No Massachusetts case had decided this question, which was noted, without even a hint of the possible answer, in *Harrison* v. *Dolan*, 172 Mass. 395 (1899).[8]

We must make a public policy determination, guided by such legislative expressions of policy as seem helpful. We know, for example, that the concept of adverse possession is not so powerful as to be allowed to override the certainty of title in registered land. We know, on the other hand, that the interests of a municipality as an owner of land are not so strong that in all instances there can be no adverse possession against it.

The Legislature has provided that "title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of

---

[7]There is the statute, we discussed above, that allows a municipality at any time to recover possession of land it holds for a public purpose. G. L. c. 260, § 31. See note 5, *supra*.

[8]The court observed that "[i]t may be said that, as a tax sale, if valid, gives a good title as against all the world, it is like prescription, and really begins a new title which can be barred only by twenty years of adverse holding after the new title begins." *Id*. at 397.

the land court." G. L. c. 60, § 64. This provision makes clear that interests in the land of one claiming through the record owner, such as "mortgagees, lienors, attaching creditors" (G. L. c. 60, § 66 [1988 ed.]), are terminated by the decree. Easements and other servitudes burdening the land are not extinguished. See G. L. c. 60, §§ 45, 77 (1988 ed.); *Crocker-McElwain Co.* v. *Assessors of Holyoke*, 296 Mass. 338, 347-348 (1937); 2 American Law of Property § 8.104 (1952 & 1977 Supp.). The absolute title proclaimed by § 64 clears the record title so that the municipality may sell the property or keep it for municipal purposes, free of the claims of the prior owner and other persons whose rights are extinguished. This legislative purpose suggests that an adverse possessor's rights should be subordinate to those of a municipality. Moreover, traditionally no significant equities have been recognized in favor of an adverse possessor, one who is a trespasser.

Whether by negligence, ignorance, indifference, or otherwise, the record owners in this case were deficient in two respects in protecting their interests. They failed to guard against the loss of their property either to the local tax-gatherer or to trespassers like the Quirks.

The town is in a different position from a private person purchasing a record owner's interest who would take subject to the accruing or accrued rights of the municipality and to the inchoate rights of the trespasser. The policy question comes down to whether we should recognize the years of adverse possession that the Quirks were permitted to accumulate because of the omissions of the record owners and the delay of the town in protecting its rights. The generally valid public purpose that, through adverse possession, land titles can be cleared and, thereby, barriers to the worthwhile use of land can be eliminated, lacks significant weight as an argument for the Quirks. When, as in this case, land has been taken for taxes and the right of redemption has been foreclosed, the title is cleared (assuming lawful processes were followed), and a public entity decides what to do with the land, either hold it for municipal purposes or sell it. During any part of the twenty-year period of the statute that has run

prior to the tax taking, a municipality had no right to challenge the trespass. Further, assuming the land has some value, the municipality has no practical option, as would a prospective arm's-length purchaser of the property, not to take over the property (for nonpayment of taxes) at some point.

We see no public policy reason to adopt a common law rule that would burden the municipality, or more specifically its taxpayers, with the omissions of the record owners from whom the property was taken for nonpayment of taxes or with the omissions of public officials who may have unreasonably delayed taking steps to protect the public's interests by taking the property for nonpayment of taxes. We have been reluctant to visit upon the public the consequences of the failure of public entities and officials to protect the public's interest. See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.*, 387 Mass. 687, 694 (1982); *Doris* v. *Police Comm'r of Boston*, 374 Mass. 443, 449 (1978). See also *Levasser* v. *Washburn*, 52 Va. (11 Gratt.) 572, 577 (1854) (time does not run against the sovereign because of "the great public policy of preserving public rights and property from damage and loss through the negligence of public officers").

The statute of limitations starts to run against a municipality, if it runs at all, when it takes adversely possessed land for nonpayment of taxes. Such a rule provides a clear starting point. It also protects the public interest.[9]

*Judgments affirmed.*

---

[9]Because most jurisdictions do not permit interests in land held by a governmental unit to be acquired by prescription or by adverse possession, the question whether a tax deed to a governmental unit itself breaks the continuity of any adverse possession rarely arises elsewhere. Procedures and statutes vary among jurisdictions, making rulings elsewhere an uncertain guide. There is some support for the view we take of the consequences of a tax taking. See *Winstead* v. *Winstead*, 204 Miss. 787, 789 (1948) (adverse possession tolled by sale to State for taxes); *Lyndel Corp.* v. *Loria*, 77 Misc. 2d 1066, 1068 (N.Y. Civ. Ct. 1973) (any adverse possession is abrogated by deed to city pursuant to in rem foreclosure action);

*Johnson* v. *Burgeson*, 25 Wash. 2d 269, 270, 271 (1946), quoting *Gustaveson* v. *Dwyer*, 78 Wash. 336, 338-339 (1914) (County took title through foreclosure and sale for delinquent taxes. "Manifestly, both record and possessory titles are equally absolutely destroyed by such a foreclosure"). Contra *Goldman* v. *Quadrato*, 142 Conn. 398, 403-404 (1955) (by implication, tax title by foreclosure does not affect adverse possession).