JOHN GIFFORD & another[1] *vs.* JOHN G. OTIS, trustee,[2]
& others.[3]

No. 06-P-1041.

Suffolk. May 16, 2007. - September 24, 2007.

Present: TRAINOR, DREBEN, & KATZMANN, JJ.

*Adverse Possession and Prescription. Real Property,* Adverse possession;
Registered land: easement; Certificate of title. *Judgment,* Preclusive effect.

Discussion of the statutory land registration scheme. [214-216]
A Land Court judge properly dismissed the plaintiffs' claim of a prescriptive
easement over a portion of land owned by the defendants, where the
defendants' predecessor in title obtained a judgment of registration for the
locus that, despite a failure to complete the registration process by securing
the issuance of a certificate of title, operated to preclude claims not ad-
dressed in the registration proceeding, including the easement claim of the
plaintiffs, whose predecessors in title did not participate in the registration
proceeding. [216-217]

CIVIL ACTION commenced in the Land Court Department on
October 3, 2005.

The case was heard by *Karyn F. Scheier*, J., on a motion for
summary judgment.

*Frederick L. Trilling* for the plaintiffs.
*James P. Mitchell* for the defendants.

KATZMANN, J. In this appeal, we consider the statutory land
registration scheme and the effect of a failure to perfect certificate
of title on a claim of prescriptive easement rights.

On October 3, 2005, the plaintiffs, John and Debra F. Gifford,
filed a verified complaint in the Land Court seeking to establish a
prescriptive easement over a portion of land owned by the de-

---

[1]Debra F. Gifford.
[2]Of the Mermaid Avenue Condominium Trust.
[3]Mohan Saini and Robert L. Siciliano, as trustees of the Mermaid Avenue
Condominium Trust.

fendants, trustees of the Mermaid Avenue Condominium Trust. On November 22, 2005, the defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment, asserting that the plaintiffs had failed to establish a prescriptive easement. In an exercise of her discretion, the Land Court judge treated the defendants' motion as one for summary judgment and held that the filing of a registration petition in April, 1986, by the defendants' predecessors in title interrupted the plaintiffs' prescriptive easement claims as of that date, and that the 1988 judgment of registration, which was affirmed in 1989 by an order of this court pursuant to our rule 1:28, precluded the plaintiffs' prescriptive easement claims before that date. Moreover, because the plaintiffs could only have enjoyed the easement between 1989 and 2005, when the complaint was filed, they could not show their use of the contested area uninterruptedly for the requisite twenty years. The plaintiffs appealed from the order granting summary judgment. We affirm the judgment of dismissal.

*Background.* The plaintiffs own a one-half undivided interest in a property known as lot 5 and numbered as 15A Pier View Avenue, in Revere (lot 5). The defendants own Mermaid Avenue (the locus), a private way located within a larger parcel (Cherry Street parcel) also owned by the defendants. Lot 5 and the Locus are separated by a single parcel, 17 Pier View Avenue.

On April 15, 1986, the defendants' predecessor in title, Carabetta Enterprises, Inc., filed a petition for registration of the Cherry Street parcel[4] in the Land Court. Carabetta Enterprises, Inc. *vs.* Furlong, Land Court Reg. Case No. 41931 (December 2, 1988). On February 18, 1987, pursuant to G. L. c. 185, §§ 38 & 39, notice was sent to all abutters, published in the Revere Journal, and posted on the locus. As nonabutters, the plaintiffs' predecessors in title did not receive written notice. Between February 27, 1987, and March 9, 1987, several parties intervened in the proceeding, asserting that they had prescriptive rights in portions of the locus. The plaintiffs' predecessors in title did not appear.

On December 2, 1988, a judgment issued from the Land Court granting a prescriptive easement to James and Dorothy

---

[4]At this time, the Cherry Street parcel was comprised of vacant lots.

Furlong to park no more than two automobiles on the locus at the rear of 11-13 Pier View Avenue (Furlong easement) and a prescriptive easement to Edmund C. Bell to park one automobile on the locus at the rear of 7-9 Pier View Avenue (Bell easement), both with the right to pass and repass over the locus.

The judge further ordered "that a decree be entered registering and confirming the petitioner's title in the property shown on Land Court Plan No. 41931A" and allotted the parties sixty days after the entry of the final judgment to determine the exact easement locations. On October 18, 1989, the Appeals Court, in an unpublished memorandum and order, affirmed the judgment, rejecting Carabetta's contention that "the evidence was insufficient to support a finding that the . . . use [by Furlong and Bell] of the locus was sufficiently open and notorious to put the owner on notice of the adverse use and give rise to prescriptive easements." *Carabetta Enterprises, Inc.* v. *Furlong*, 27 Mass. App. Ct. 1422 (1989). The registration process, however, was never completed in accordance with G. L. c. 185, § 48, and, as a certificate of title never issued, the registration proceeding remains open.

After a mortgage holder foreclosed on the property in August, 2003, the defendants acquired the Cherry Street parcel.[5] In May, 2005, the defendants posted signs along Mermaid Avenue, which read: "Mermaid Ave: Private Rd., M.G.L. Sec. 79F Ch. 233, Resident/Easement Only, NO PARKING, Police Take Notice, Towed at Owners Expense, M.G.L. Sec. 120D Ch. 266, G&J Towing 781-284-1810". The plaintiffs then instituted the present action.

The plaintiffs' claims are primarily premised on the affidavit of Daniel F. Duggan, the owner of lot 5 between July 2, 1979, and September 8, 2000, and the plaintiffs' predecessor in title. Duggan avers that beginning in July 2, 1979, he and his wife, Grace M. Duggan, parked their automobiles on the locus. Duggan further contends that he and his wife used the Mermaid Avenue area for ingress and egress to their parcel, that they used the parcel without permission, and that they did so continu-

---

[5]While the defendants were presumably aware of the Bell and Furlong easements, it is not clear from the record that they had actual knowledge that the plaintiffs or their predecessors used the locus in a similar manner.

ously[6] over a twenty-year period. The plaintiffs also assert, on the basis of Duggan's affidavit, that from about 1930, until May, 2005, they and their predecessors in title used the locus for parking and for access and egress without permission from the owners.

*Discussion.* The filing of a petition to register land immediately interrupts a claim of easement by prescription. See *Sandwich* v. *Quirk*, 409 Mass. 380, 383, cert. denied, 502 U.S. 814 (1991) (interruption of claim of adverse possession); *Pugatch* v. *Stoloff*, 41 Mass. App. Ct. 536, 542 n.8 (1996). Thus, in the present case, the plaintiffs' prescription rights claim was interrupted in 1986, when Carabetta filed its petition to register land. We therefore must look backward to determine whether the plaintiffs' predecessors in title had established an easement by prescription at the time of the 1986 filing. We conclude that although the plaintiffs may have pleaded sufficient facts to establish a dispute of material fact on the issue of an easement by prescription in the period up to 1986, in its present posture, the plaintiffs' claim fails because the 1988 judgment of registration, affirmed by this court in 1989, foreclosed any claims on the locus prior to that point. To the extent the plaintiffs wish to challenge the judgment of registration, this is not the appropriate forum.

We turn to the effect of the registration proceeding. "The purpose of the Land Court Act [is] to provide a means by which title to land may be made certain and indefeasible." *Deacy* v. *Berberian*, 344 Mass. 321, 328 (1962). General Laws c. 185, §§ 26 et seq. (as amended through St. 1981, c. 685, §§ 8 et seq.), contemplates a four-part land registration process to effectuate this goal. Under the first stage, described generally in G. L. c. 185, § 27, the petitioning party must file a complaint with the Land Court, setting forth a description of the property for which registration is sought.[7] G. L. c. 185, § 26. "Immediately after the filing of a complaint," the court must refer the matter to an examiner of title, "who shall search the records

---

[6]There may be a dispute of material fact whether the Duggans used the locus in a continuous manner. Affiant Richard Conley stated that for many years the Duggans used parking spots in the summer months only.

[7]While the filing of the complaint does not affect the state of title, *Batchelder* v. *Planning Bd. of Yarmouth*, 31 Mass. App. Ct. 104, 108 (1991), it immediately interrupts claims of adverse possession. *Quirk* v. *Sandwich, supra* at 383.

and investigate all facts stated in the complaint or otherwise brought to his notice, and shall file in the case a report thereon, concluding with a certificate of his opinion upon the title." G. L. c. 185, § 37. In initiating this process, the petitioner is seeking to confirm title to the subject property, thereby foreclosing potentially competing claims or rights. See *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 866 (1982).

"Unless the plaintiff withdraws his petition within fourteen days of the notice of the filing of the examiner's report from the recorder," G. L. c. 185, § 38, the recorder shall cause notice of the filing of the complaint to be published in an appropriate newspaper, to have actual notice provided by registered mail to "all adjoining owners and to all persons who appear to have any interest in or claim to the land included in the complaint," and to have a copy of the notice posted on a conspicuous place on the subject property. G. L. c. 185, § 39. Thus, under this second stage of the process, all parties with potentially competing interests in the land are notified of the pendency of the proceeding. Parties holding competing interests must file an answer, specifically stating all objections as well as the claimed interest, or face default. G. L. c. 185, §§ 41, 42, 43.

In the third stage, the Land Court conducts a hearing to evaluate the legitimacy of the petitioner's interests in the subject property. G. L. c. 185, §§ 44, 45. After consideration, if the Land Court judge determines that title — in whole or in part — rests with the petitioner, judgment confirming title shall enter. See G. L. c. 185, § 45. This judgment is binding on the parties, their privies and the land.[8] See G. L. c. 185, § 45 (The judgment "shall be conclusive upon and against all persons, including the commonwealth, whether mentioned by name in the complaint, notice or citation, or included in the general description 'to all whom it may concern' ").

If the judge finds that the petitioner lacks title in the subject property, judgment shall enter dismissing the complaint. G. L. c. 185, § 44. In the alternative, prior to the final judgment, the petitioner may withdraw the complaint. *Ibid.* In either event,

---

[8]Where a party has obtained a right in the land by fraud, the statute permits a complaining party to file a complaint for review within one year of the entry of judgment. G. L. c. 185, § 45.

§ 44 contemplates that the findings bind the parties, their priv-
ies and the land unless otherwise noted. See G. L. c. 185, § 44
(order of dismissal "shall bind the parties, their privies and the
land in respect of any issue of fact which has been tried and
determined"). See also *Paull* v. *Kelly*, 62 Mass. App. Ct. 673,
677-679 (2004) (judgment issued without prejudice has no
preclusive effect).

Once a judgment of registration enters, the fourth stage of the
proceeding begins, wherein the recorder sends a certified copy
of the judgment to the registry of deeds in the appropriate county.
G. L. c. 185, § 48. Pursuant to § 48, the registrar transcribes
the judgment of title, including all encumbrances thereof, into a
certificate of title. *Ibid.* Once the judgment is entered and the
certificate issued, the petitioner and every subsequent owner
holds title free from all encumbrances except those listed on the
certificate. See G. L. c. 185, § 46. The certificate of title then
serves as a public record of title.

As we have noted, in the present case, Carabetta filed a com-
plaint with the Land Court seeking to register title to the locus.
After notice, several parties claimed easements over the locus.
A Land Court judge subsequently determined that the Bell and
Furlong easements were valid, and entered a judgment ordering
that "a decree be entered registering and confirming the peti-
tioner's title. . . ." The judgment was affirmed by a decision
of this court. It is undisputed that the plaintiffs' predecessors in
title did not participate in this process.[9]

However, after we affirmed the judgment of registration, a
certificate of title was not issued for the locus. It may be that
the certificate of title did not initially issue because the Land
Court judge provided the parties with sixty days in which to
delineate the easement boundaries.[10] In any event, for reasons
not specified in the record, prior to a foreclosure, Carabetta did

---

[9]Pursuant to G. L. c. 185, §§ 38 and 39, where it appears that a party has an
interest in the property — as the Duggans' use of the locus from at least 1979 to
1986 so indicates — the petitioner had an obligation to provide actual notice to
said user.

[10]The Land Court judge suggested that "[p]resumably, after the Appeals
Court upheld the rights in favor of others [in its 1989 decision], petitioners
had no incentive to take steps which may have been necessary to assist the
court in completing the Registration Case and moving title to Locus to the

not complete the process. No decree was transcribed and forwarded to the Suffolk County registry district of the Land Court in accordance with G. L. c. 185, § 48.

As such, the locus is not entitled to the protections automatically accruing to registered land pursuant to G. L. c. 185, §§ 46 and 53. See G. L. c. 185, § 46 ("Every plaintiff receiving a certificate of title in pursuance of a judgment of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate"). Rather, we must determine whether the judgment of registration, standing alone, operates to preclude all claims not presented and addressed in that proceeding.

Pursuant to G. L. c. 185, § 45, the judgment of registration is "conclusive upon and against all persons . . . mentioned by name . . . or included in the general description 'to all whom it may concern.' " See *Paull* v. *Kelly, supra* at 676 n.8 (decree of land registration is conclusive on all parties). As such, the judgment of registration, independent of the issuance of a certificate of title, operates to preclude claims not addressed in the Land Court proceeding. This includes the easement claim by the present plaintiffs, whose predecessors in title did not participate in the proceeding.[11] The judge did not err in dismissing the plaintiffs' action.

*Judgment affirmed.*

---

registered side of the Suffolk County Registry of Deeds."

[11]As we conclude that the judgment of registration forecloses the plaintiffs' present claim, we need not reach the summary judgment issue. Nor do we consider now whether the plaintiffs can pursue a collateral attack on the validity of the judgment of registration, or the venue for such an action, if appropriate.