NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1985                                        Appeals Court

       1148 DAVOL STREET LLC.  vs.  MECHANIC'S MILL ONE LLC.


                          No. 13-P-1985.

     Bristol.     September 4, 2014. - December 12, 2014.

          Present:  Cohen, Meade, & Milkey, JJ.


Adverse Possession and Prescription.  Municipal Corporations,
     Adverse possession.  Real Property, Adverse possession.



     Civil action commenced in the Superior Court Department on
April 8, 2008.

     The case was heard by Renée P. Dupuis, J.


     Arthur D. Frank, Jr., for the defendant.
     John M. Sahady for the plaintiff.


     MILKEY, J.  At issue in this appeal is the ownership of a

strip of land in Fall River.  The defendant was the record owner

of the disputed property, which the plaintiff claimed based on

adverse possession.  The parties agree that the nature and

length of the plaintiff's use of the land generally was

sufficient to establish title by adverse possession.  The only

contested issue is one of law: whether the plaintiff may count the time during which title to the land was held by one of the defendant's predecessors-in-title, the city of Fall River (city), toward the requisite twenty-year period of continuous adverse use. Relying on G. L. c. 260, § 31, the defendant argues that the plaintiff's adverse possession claim did not begin to run until the city transferred the property to a private party. In a thoughtful decision issued after a trial on stipulated facts, a Superior Court judge rejected this argument as a matter of law. She ruled that a private record owner of once-public land opposing an adverse possession claim cannot invoke G. L. c. 260, § 31, as a defense. We agree and therefore affirm.

1. Background. By 1975, the city of Fall River had acquired a parcel of land located at 1082 Davol Street in Fall River (Mechanic's Mill parcel).[1] The property included "a large building [that] had been used for manufacturing purposes." The record does not reveal what actual use the city itself made of the parcel, but the parties stipulated that the city "held" the property "for a public purpose as defined in Chapter 260, Section 31 of the General Laws." In 1989, the city sold the

---

[1] The facts are drawn from the parties' bare bones stipulation, even though some of the stipulated facts appear somewhat at variance with documents referenced in the stipulation. In any event, the discrepancies are not material.

Mechanic's Mill parcel to a private corporation.  Since then, the property has continued in private ownership, and it is now owned by defendant Mechanic's Mill One LLC (record owner).

In 1975, Paul and Albert Berube acquired the property at 1148 Davol St., which lies adjacent to the Mechanic's Mill parcel.  After purchasing that property, the Berubes began to use as their own a strip of the Mechanic's Mill parcel -- totaling approximately 25,000 square feet in size -- that lies along the boundary of the two properties.[2]  The parties stipulated that the Berubes and their successors-in-title "exercised undisturbed dominion over the [disputed strip] which was actual, open, notorious, and adverse to the claims of all others, and [that it] continued for thirty-two (32) years, namely from 1975 to 2007."  After plaintiff 1148 Davol Street LLC acquired the Berubes' parcel in 2007, a dispute over the ownership of the strip ensued.  This action followed in 2008.

2.  Discussion.  "A party claiming title to land through adverse possession must establish actual, open, exclusive, and nonpermissive use for a continuous period of at least twenty years."  Totman v. Malloy, 431 Mass. 143, 145 (2000).  As noted, the only issue in dispute is whether the plaintiff can count

_____

[2] The stipulation does not flesh out what the actual adverse use entailed.  The verified complaint alleged that the Berubes paved the area, cordoned it off with a fence and other means, and used it for parking.

toward that twenty-year period, the time that title to the Mechanic's Mill parcel was held by the city. If the adverse possession "clock" did not start until the city transferred the property to a private party in 1989, then it is undisputed that the twenty-year period had not fully run when this action was filed. Therefore, as the parties agree, the resolution of the legal issue before us is dispositive of the dispute.

To support its argument, the record owner seeks to invoke G. L. c. 260, § 31. That section is a statute of limitations that governs "action[s] for the recovery of land . . . commenced by or in behalf of the commonwealth."[3] As the plaintiff points out, the current action between two private parties indisputably is not an action "commenced by or in behalf of the

---

[3] In its current form, G. L. c. 260, § 31, inserted by St. 1987, c. 564, § 54, (emphasis supplied) reads in full as follows:

"No action for the recovery of land shall be commenced by or in behalf of the commonwealth, except within twenty years after its right or title thereto first accrued, or within twenty years after it or those under whom it claims have been seized or possessed of the premises; but this section shall not apply to the province lands in the town of Provincetown lying north and west of the line fixed by section twenty-five of chapter ninety-one, to the Back Bay lands, so called, in Boston, or to any property, right title or interest of the commonwealth below high water mark or in the great ponds; provided, further, that this section shall not bar any action by or on behalf of the commonwealth, or any political subdivision thereof, for the recovery of land or interests in land held for conservation, open space, parks, recreation, water protection, wildlife protection or other public purpose."

commonwealth." The statute therefore has no direct application here. Viewed in its best light, the record owner's argument rests not on § 31's direct application, but on the statute's potential interaction with background common law principles. In order to evaluate the validity of such arguments, we need to examine § 31 in historical context.

a. The common law rule. At common law one could not claim prescriptive rights against the sovereign. Attorney Gen. v. Revere Copper Co., 152 Mass. 444, 449-450 (1890). This principle was embodied in the maxim "Nullum tempus occurrit regi." Id. at 449. The United States Supreme Court once observed that this "ancient rule of the common law, that time does not run against the State . . . has been settled for centuries, and is supported by all courts in all civilized countries." Armstrong v. Morrill, 81 U.S. (14 Wall.) 120, 145 (1872) (Armstrong). This axiom raised the question of what rules should apply where the land that is the subject of an adverse possession claim is private land that was formerly held by a State, and where the adverse use bridged the change in ownership. Under the common law, the party claiming adverse possession could not count toward the applicable limitations period the time he adversely occupied the land while title was held by the State. Id. at 144, 145, citing United States v. Hoar, 26 F. Cas. 329 (C.C. Mass. 1821) (No. 15,373); Lindsey v.

Lessee of Miller, 31 U.S. (6 Pet.) 666, 673 (1832).  Instead, adverse possession began to run only when the land was transferred into private hands.  See id. at 146.[4]

b.  The 1835 statute.  In Massachusetts, the common law principle that one cannot obtain title to public lands by adverse possession was superseded by statute enacted in 1835.  Attorney Gen. v. Revere Copper Co., 152 Mass. at 450 (citing R.S. c. 119, § 12).  Under that enactment, the Commonwealth was held to the same limitations period that applied to real estate recovery actions brought by private parties.  As a result, "a title by disseisin [could] be acquired against the Commonwealth as readily as against a private person."  Ibid.  Even though the statute did not include an express reference to the Commonwealth's "subdivisions" until 1987, it has long been interpreted as applying to cities and towns in addition to the

---

[4] Armstrong provides a vivid illustration of this principle. Long after the party claiming title by adverse possession had begun its adverse use, the Commonwealth of Virginia gained title to the property by operation of law when the record owner failed to pay applicable taxes.  81 U.S. at 133.  The record owner eventually redeemed title.  Id. at 137.  The adverse use in fact continued throughout, lasting for an uninterrupted period that far exceeded the fourteen year limitations period then applicable in Virginia.  Id. at 144.  Nevertheless, the Court ruled, as a matter of law, that because no adverse possession could run against the State, the State's holding title by itself broke the adverse possessor's "continuity of possession," and the applicable limitations period began to run only when the record owner reclaimed his title.  Id. at 146, citing Hall v. Gittings' Lessee, 2 H. & J. 112) (Md. 1807).

Commonwealth.  <u>Inhabitants of Cohasset</u> v. <u>Moors</u>, 204 Mass. 173, 178 (1910).

At least on its face, the 1835 statute applied to all Commonwealth lands without exception.  However, the statute underwent modest modifications in 1852, 1854, and 1867, all of which exempted certain limited categories of property from the statute's reach.[5]

With that statutory framework in place, the Supreme Judicial Court eventually had occasion to consider whether a tax taking interrupted a third party's otherwise continuous adverse use.  <u>Harrison</u> v. <u>Dolan</u>, 172 Mass. 395 (1899) (<u>Harrison</u>).  Because Massachusetts generally had abrogated the axiom that time cannot run against the sovereign, the court declined to adhere to the common law counting rules recognized in <u>Armstrong</u>, 81 U.S. at 145, and similar cases, at least in the context in

---

[5] In 1852, the Legislature expressly repealed the 1835 statute with respect to its application to the Commonwealth's interest in certain "lands or flats" in the Back Bay area of Boston, and it stated that "no adverse possession or occupation [of the Back Bay lands] . . . for any period of time, shall be sufficient to defeat or divest the title of the Commonwealth therein."  St. 1852, c. 253, §§ 1, 2.  In 1854, the statute was amended further to exempt "all the Province lands within the town of Provincetown," through language that declared the specified lands to be free from claims of adverse possession. St. 1854, c. 261, § 8.  These amendments were eventually codified in the general statutes of 1860, G. S. c. 154, § 12. The statute was amended once more in 1867 to exclude from adverse possession the "great ponds" and rights in waterfront property below the high-water mark.  St. 1867, c. 275, § 1.

which the case was presented.  In Harrison, authored by Justice

Holmes, the court reasoned that "such cases have no application

to this case, if for no other reason, because the statute runs

against the Commonwealth as well as against private persons."[6]

Thus, the court held that the tax taking by itself did not

interrupt the continuity of the adverse use.

c.  The 1987 amendment.  Subject to the minor amendments

mentioned above, the 1835 statute eventually was recodified as

G. L. c. 260, § 31, and it lay unmodified until 1987.  As the

record owner accurately highlights, the 1987 amendment was

significant.  See St. 1987, c. 564, § 54 (inserting the language

in G. L. c. 260, § 31, highlighted in note 3, supra).

Specifically, while keeping intact the then-existing statutory

language, the Legislature added a general proviso that greatly

---

[6] The court in Harrison also distinguished Armstrong on the
ground that there, Virginia had held title to the land by
operation of law, while here, "the commonwealth never had even a
momentary title to the land."  Harrison at 396.  The court noted
that some argument could be made that had the tax taking
proceeded to foreclosure, this would restart the adverse
possession clock, but declined to reach this "more subtle
argument."  Ibid.  Almost a century later, the court faced the
reserved question in a case in which the land at issue had been
foreclosed upon but was still held by the municipality.
Sandwich v. Quirk, 409 Mass. 380, 383 (1991).  The court
declined to resolve the question of whether a subsequent change
in the law exempted the city from being subject to the twenty
year limitations period (see n.7, infra), but held that "t]he
statute of limitations starts to run against a municipality, if
at all, when it takes adversely possessed land for nonpayment of
taxes."  Id. at 385.

expanded the categories of public property not subject to any limitations period in land recovery actions brought by the Commonwealth or its subdivisions. That proviso applies not only to land put to various enumerated environmental and recreational uses, but also more generally to land held for "other public purpose[s]." We have interpreted the "other public purpose" language broadly. See Aaron v. Boston Redev. Authy., 66 Mass. App. Ct. 804, 808 (2006) (redevelopment authority not barred from recovering land it held for urban renewal project notwithstanding a private party's having adversely occupied the land for more than twenty years).[7]

d. Evaluating the record owner's arguments. In light of the sweeping nature of the 1987 amendment, the record owner argues that the Legislature broadly intended that State or municipal "land put to a 'public purpose' could never be subject to adverse possession." On this basis, it argues that the limitations period cannot run while the property is held by a public party against whom adverse possession cannot accrue. In effect, the record owner is arguing that the 1987 amendment has brought us full circle back to a legal regime under which, at

---

[7] Compare Sandwich v. Quirk, 409 Mass. 380, 382 & n.6 (1991) (noting, without resolving, the question whether land obtained by a municipality through a tax taking is held for a "public purpose" within the meaning of G. L. c. 260, § 30).

least as a general matter, time cannot run against the sovereign.

Although characterizing public lands as now being incapable of being subject to adverse possession is in some respects a tempting shorthand, it is not strictly speaking accurate. Nothing in the statutory language immunizes such lands from having an adverse possession claim begin to accrue during the period of public ownership.  Nor does the new language manifest a wholesale embrace of the superseded common law axiom that time cannot run against the sovereign (the doctrinal foundation on which Armstrong is based).[8]  Rather, the language signals a Legislative intent that adverse possession claims involving public property be treated merely as a limitations issue governed by statute.[9]

---

[8] Unlike the amendments to the limitations period enacted during the nineteenth century, see note 5, supra, the 1987 amendment did not repeal the 1835 statute as it applied to the exempted properties, nor did it abrogate the Commonwealth's waiver of sovereign immunity.  Indeed, in form, the new proviso language is stated merely as an exception to the general rule that the Commonwealth is subject to the same twenty year limitation period as private parties (albeit an exception that may, as a practical matter, "swallow the rule").

[9] We acknowledge the interpretive principle that radical departures from the common law are not to be "lightly inferred." See, e.g., Passatempo v. McMenimen, 461 Mass. 279, 290 (2012). However, the Legislature unquestionably broke with the common law in 1835.  The question here is whether in 1987 the Legislature intended a wholesale re-adoption of the common law, including its corollary counting rules.

With such overarching observations in place, we have little difficulty rejecting the record owner's argument.  In interpreting legislative intent, we, of course, look primarily to the language of the relevant statutes.  See Northeast Energy Partners, LLC, trustee v. Mahar Regional Sch. Dist., 462 Mass. 687, 692 (2012) (citing Simon v. State Examrs. of Electricians, 395 Mass. 238, 242 (1985)).  By its plain terms, G. L. c. 260, § 31, as amended, St. 1987, c. 564, § 54, is limited to addressing when the Commonwealth and its subdivisions may bring actions to recover land.  While the 1987 amendment undeniably added broad protections allowing the Commonwealth and its subdivisions to recover land held for public purposes, nothing in the statute evinces an intent that such protections also benefit a subsequent private owner.  Notably, G. L. c. 260, § 21, the statute of limitations that applies to private actions to recover land, was left unchanged by the 1987 enactment, and it sets forth no exception involving properties formerly held by the Commonwealth or its subdivision.  See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 247 (1993) (related statutes must be construed in harmony with one another "so as to give rise to a consistent body of law").

Nor has the record owner demonstrated that its interpretation is supported by the public policy considerations

that animated the 1987 enactment.[10]  The doctrine of adverse

possession serves to clear titles and to promote economic

development.  Sandwich v. Quirk, 409 Mass. 380, 384 (1991).  The

addition of the proviso language in 1987 reflects a legislative

judgment that such interests are outweighed by those furthered

by letting the Commonwealth and its subdivisions bring actions

to recover land held for public purposes.  However, the

countervailing interests in preserving land held for public

purposes no longer come into play once the land in question has

been transferred to a private party.[11]  As the trial judge aptly

observed:

> "The purposes enumerated in G. L. c. 260, § 31 concern
> land uses, which benefit the public at large.  Therefore,
> by preventing the Commonwealth from losing its right of
> action to recover such lands, the statute facilitates the
> continued protection of that land in the interest of
> preserving those public benefits.  The statute grants the
> Commonwealth the ability to recover such lands so that they
> may continue to be held for those same purposes, which

---

[10] The amendment to § 31 was included as part of a comprehensive environmental measure titled, "An Act Providing for an Environmental Enhancement and Protection Program for the Commonwealth."  St. 1987, c. 564.  One of the main purposes of the bill was to promote the acquisition and public enjoyment of land for recreational uses.  Id. at § 8 (appropriating funding for municipalities' acquisition of land for "municipal park and recreation purposes and for the restoration and rehabilitation of such . . . lands").

[11] Of course, this means that purchasers will need to exercise diligence in keeping an eye out for potential adverse possession claims regardless whether there is a public entity in the chain of title.  We see no hardship or unfairness in this result.

provide a benefit to the general public. To allow a private corporation the ability to take advantage of a law clearly designed to benefit the State would be inapposite to the purpose of that law."

Finally, we note that our conclusions are supported by case law in other jurisdictions. For example, the Supreme Court of Virginia has long distanced itself from the common law rule recognized in Armstrong, 81 U.S. at 145, even though that case arose under Virginia law. See Thomas v. Young, 196 Va. 1166, 1177 (1955) (tax taking under State statute did not as matter of law interrupt the continuity of a third party's adverse use, in part because "[t]he Commonwealth's immunity to the running of the statute of limitations cannot be used as a shield to the advantage of [the record owner] 'who alone will enjoy the benefits'"), quoting from 1 Am. Jur., Adverse Possession, § 104. See also Lovey v. Escambia County, 141 So. 2d 761, 765 (Fla. Dist. Ct. App. 1962) ("The right to assert sovereign immunity from the operation of the statute of limitations does not extend, however, to [the government's] assignee or transferee where the suit is brought for the private benefit, and to enforce the rights of a private person").[12]

---

[12] There are other cases, to the same general effect, that arrive at that result through a somewhat different doctrinal framework. For example, California appellate courts have highlighted that even if an adverse possessor cannot gain rights against the government during the period of public ownership, he "may nevertheless adversely possess the land as against others." Abar v. Rogers, 23 Cal. App. 3d 506, 512 (1972). Meanwhile, the

3. <u>Conclusion</u>.  Because we agree with the judge that G. L.
c. 260, § 31, does not aid a private party in defending an
otherwise valid adverse possession claim, we affirm the
judgment.[13]

<u>So ordered</u>.

---

Connecticut Supreme Court has held that a record owner who
obtained title following a tax taking cannot invoke a statute
that protected municipalities from adverse possession claims
involving land held for public use, on the ground that the land
was never put to public use.  <u>Goldman</u> v. <u>Quadrato</u>, 142 Conn.
398, 402, 403 (1955).

[13] It is not clear on this record whether the city acquired
title through purchase, eminent domain, tax foreclosure, or some
other means.  In any event, the record owner has not argued that
the mode through which the municipality acquired title -- as
opposed to the fact of its holding title -- mandates a
restarting of the adverse possession clock.  Compare <u>Sandwich</u> v.
<u>Quirk</u>, 409 Mass. at 385 (in the tax foreclosure context, adverse
possession cannot begin to run against a municipality at least
until it takes the land).